## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

### *Electronically Filed*

| | |
|---|---|
| **FRIEDA AARON** | ) |
| **8515 BREEZEWOOD COURT, #103** | )   **CASE NO.** |
| **CINCINNATI, OH 45203** | ) |
| | )   **JUDGE** |
| **AND** | ) |
| | ) |
| **JAMES ALBERS** | ) |
| **2718 PINEVIEW DRIVE** | ) |
| **VILLA HILLS, KY 41017** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **JIMMY ALLEN** | ) |
| **3165 BLUE CREEK ROAD** | ) |
| **BROOKVILLE, INDIANA 47012** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **KATRINA ALLEN** | ) |
| **5608 ZOAR ROAD, LOT 277** | ) |
| **MORROW, OH 45215** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **SHERRI ALLEN** | ) |
| **7420 WYNNE PLACE, APT. 6** | ) |
| **CINCINNATI, OH 45233** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **REBECCA APPLEGATE** | ) |
| **11 MONTGOMERY WAY** | ) |
| **AMELIA, OH 45102** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **GEORGE ARNOLD** | ) |
| **10647 CHESHIRE RIDGE DRIVE** | ) |
| **FLORENCE, KY 41042** | ) |

<pre>
                                      )
AND                                   )
                                      )
MICHAEL ASHCRAFT,                     )
ADMINISTRATOR OF THE ESTATE           )
OF DIANA ASHCRAFT                     )
38-B SPRING STREET                    )
ELSMERE, KY 41018                     )
                                      )
AND                                   )
                                      )
BRIAN ATKINS                          )
9500 COLLETT ROAD, LOT 24             )
WAYNESVILLE, OH 45068                 )
                                      )
AND                                   )
                                      )
THOMAS ATKINSON                       )
2544 LITTLE DRY RUN ROAD              )
CINCINNATI, OHIO 45244                )
                                      )
AND                                   )
                                      )
JONATHAN ATWELL                       )
5143 MONTEREY MAPLE GROVE RD )
BATAVIA, OH 45103                     )
                                      )
AND                                   )
                                      )
THOMAS AUGST                          )
314 A ST. ANDREWS DRIVE               )
CINCINNATI, OH 45245                  )
                                      )
AND                                   )
                                      )
GAYLE BACHMANN                        )
2239 MOSSY GROVE                      )
HAMILTON, OH 45013                    )
                                      )
AND                                   )
                                      )
CAIDAN BAILEY                         )
2491 CAMELLIA COURT                   )
COVINGTON, KY 41017                   )
                                      )
AND                                   )
</pre>

)
**ERNEST BAKER, ADMINISTRATOR** )
**OF THE ESTATE OF NICOLE BAKER** )
**7570 NEWKIRK DR.** )
**FAIRFIELD, OH 45014** )
)
**AND** )
)
**PAUL BAKER** )
**14 PICCADILLY DRIVE** )
**HAMILTON, OH 45013** )
)
**AND** )
)
**JENNIFER BALLINGER** )
**1718 MILL VALLEY** )
**TAYLOR MILL, KY 41017** )
)
**AND** )
)
**THOMAS BARTH** )
**1850 LEWAY DRIVE** )
**FAIRFIELD, OH 45014** )
)
**AND** )
)
**CINDY BARTLETT** )
**4652 CATALPA COURT** )
**FORT WRIGHT, KY 41017** )
)
 **AND** )
)
**LAURA BATSCHE** )
**6655 SHADY OAK LANE** )
**MASON, OH 45040** )
)
**AND** )
)
**NICHOLAS BATTISTA** )
**6263 JESSICA COURT** )
**MIDDLETOWN, OH 45044** )
)
**AND** )
)
**JODY BAUER** )
**4241 ROSELAWN AVENUE** )

3

**BATAVIA, OH 45103**                    )
                                         )
**AND**                                  )
                                         )
**JOSEPH BAUMGARDNER**                   )
**10252 LIMERICK CIRCLE**                )
**COVINGTON, KY 41015**                  )
                                         )
**AND**                                  )
                                         )
**STEVEN BAYLISS, EXECUTOR OF**          )
**THE ESTATE OF LOUISE BAYLISS,**        )
**36 SHERATON COURT**                    )
**HAMILTON, OH 45013**                   )
                                         )
**AND**                                  )
                                         )
**PHYLLIS BECHTOLD**                     )
**1937 MT. VERNON DRIVE**                )
**FT. WRIGHT, KY 41011**                 )
                                         )
**AND**                                  )
                                         )
**JUDY BECK**                            )
**215 BLUE QUAIL PLACE**                 )
**TRENTON, OH 45067**                    )
                                         )
**AND**                                  )
                                         )
**NANCY BEGLEY**                         )
**5628 YEATMAN ROAD**                    )
**CINCINNATI, OH 45252**                 )
                                         )
**AND**                                  )
                                         )
**TERRY BEIL**                           )
**P.O. BOX 132**                         )
**PERRY PARK, KY 40363**                 )
                                         )
**AND**                                  )
                                         )
**DENISE BENGE**                         )
**932 CROSSINGS DRIVE**                  )
**CRESCENT SPRINGS, KY 41017**           )
                                         )
**AND**                                  )

|  |  |
|---|---|
| **NICK BENGE** | ) |
| **932 CROSSINGS DRIVE** | ) |
| **CRESCENT SPRINGS, KY 41017** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **SARAH INSKEEP, EXECUTOR** | ) |
| **OF THE ESTATE OF ANTOINETTE** | ) |
| **BENJAMIN** | ) |
| **7 EAST LAKEVIEW DRIVE, #17** | ) |
| **CINCINNATI, OH 45237** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **WILLIAM BENTON** | ) |
| **8124 TIMBERTREE WAY** | ) |
| **WEST CHESTER, OH 45069** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **DENISE BESS** | ) |
| **1873 TIMBERIDGE DRIVE** | ) |
| **LOVELAND, OH 45140** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **LEONA BEYER** | ) |
| **325 KENYON DRIVE** | ) |
| **HAMILTON, OH 45015** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **EDYTHE BISHOP** | ) |
| **408 BROAD STREET** | ) |
| **FALMOUTH, KY 41040** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **PAUL BOGGS, ADMINISTRATOR** | ) |
| **OF THE ESTATE OF BARBARA** | ) |
| **BOGGS** | ) |
| **3815 SNOOK ROAD** | ) |
| **MORROW, OH 45152** | ) |
|  | ) |
| **AND** | ) |

|  | ) |
| --- | --- |
| **HAWKS, STEPHANIE, AS** | ) |
| **EXECUTRIX OF THE ESTATE** | ) |
| **OF NANCY BOLAND** | ) |
| **7133 DIMMICK ROAD** | ) |
| **WEST CHESTER, OH 45069** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **JENNIFER BOOKMAN** | ) |
| **111 W 3RD AVENUE** | ) |
| **COLUMBUS, OH 43201** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **PATRICIA BOONE** | ) |
| **1018 BRIGHTON STREET** | ) |
| **NEWPORT, KY 41071** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **DEENA BORCHERS** | ) |
| **5057 SANDMANN DRIVE APT. 117** | ) |
| **TAYLOR MILL, KY 41015** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **DORIS BOTNER** | ) |
| **6060 EDDINGTON DRIVE** | ) |
| **LIBERTY TOWNSHIP, OH 45044** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **GLEN BOTNER, ADMINISTRATOR** | ) |
| **OF THE ESTATE OF GERALD** | ) |
| **BOTNER** | ) |
| **6060 EDDINGTON DRIVE** | ) |
| **LIBERTY TOWNSHIP, OH 45044** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **NANCY BOWMAN** | ) |
| **1188 LICKERT ROAD** | ) |
| **ALEXANDRIA, KY 41001** | ) |
|  | ) |
| **AND** | ) |

6

**PENNY BRACKETT**                           )
**8735 LOCUST GROVE RD.**                     )
**BURLINGTON, KY 41005**                      )
                                              )
**AND**                                       )
                                              )
**LATOYA BRADSHAW**                           )
**2701 OAKLEAF AVE. APT 3**                   )
**CINCINNATI, OH 45212**                      )
                                              )
**AND**                                       )
                                              )
**CHRISTINA BRASHEAR**                        )
**6231 PAULLIN DRIVE**                        )
**MIDDLETOWN, OH 45042**                      )
                                              )
**AND**                                       )
                                              )
**MELISSA BRAUCHER**                          )
**4100 WOODMONT DRIVE**                       )
**BATAVIA, OH 45103**                         )
                                              )
**AND**                                       )
                                              )
**DOMINQUE BRAY**                             )
**805 BUNNING LANE**                          )
**COLD SPRING, KY 41076**                     )
                                              )
**AND**                                       )
                                              )
**LINDSEY BRAY**                              )
**14189 PLUM CREEK ROAD**                     )
**BUTLER, KENTUCKY 41006**                    )
                                              )
**AND**                                       )
                                              )
**RANDY BREWER**                              )
**5931 MARSH CIRCLE**                         )
**LOVELAND, OH 45140**                        )
                                              )
**AND**                                       )
                                              )
**SHARON BRICE**                              )
**5504 KENNEDY AVENUE**                       )
**CINCINNATI, OH 45213**                      )

)
**AND** )
)
**MELVIN JAMES, EXECUTOR OF** )
**THE ESTATE OF CARRIE BRITTEN,** )
**4531 PADDOCK RD.** )
**APT. #1** )
**CINCINNATI, OH 45229** )
)
**AND** )
)
**CALVIN BROWN** )
**1889 PEBBLE RIDGE #5** )
**MILFORD, OH 45150** )
)
**AND** )
)
**MALIKA BONNER, ADMINISTRATOR** )
**OF THE ESTATE OF JAMES BROWN** )
**1610 NEILSON PLACE** )
**CINCINNATI, OHIO 45230** )
)
**AND** )
)
**TARA BROWN** )
**4207 ST. THOMAS AVE.** )
**LOUISVILLE, KY 40218** )
)
**AND** )
)
**LOZIER, RICHARD, AS EXECUTOR** )
**OF THE ESTATE PATRICIA BRUCE** )
**3904 LORI DRIVE, APT. 7** )
**ERLANGER, KY 41018** )
)
**AND** )
)
**JONATHAN BRUNNER** )
**302 ARDMORE DRIVE** )
**MIDDLETOWN, OH 45042** )
)
**AND** )
)
**VICKI BUSCHUR** )
**4927 COLUMBIA CIRCLE** )
**HAMILTON, OH 45011** )

8

)
**AND** )
)
**KATHLEEN BUSHELMAN** )
**35 SHERRY ROAD, APT. 1E** )
**WYOMING, OH 45215** )
)
**AND** )
)
**JACK BUSKIRK, ADMINISTRATOR** )
**OF THE ESTATE OF ANNETTE** )
**BUSKIRK** )
**5032 COLLEGE CORNER PIKE #59** )
**OXFORD, OH 45056** )
)
**AND** )
)
**BRENDA BUTLER** )
**3515 CARLISLE AVENUE** )
**LATONIA, KENTUCKY 41015** )
)
**AND** )
)
**DOUG CALLAHAN** )
**7251 COSNER DRIVE** )
**HUBER HEIGHTS, OH 45424** )
)
**AND** )
)
**JANET CAMPBELL** )
**1109 STATE ROUTE 133** )
**BETHEL, OH 45106** )
)
**AND** )
)
**ROBERT CAMPBELL** )
**7668 OLD WALNUT DRIVE** )
**WEST CHESTER, OHIO 45069** )
)
**AND** )
)
**ANDREW CARR** )
**28529 SHORT LANE** )
**BROOKEVILLE, IN 47012** )
)
**AND** )

**RENECIA CHERRY** )
**1440 W. KEMPER RD #1613** )
**CINCINNATI, OH 45240** )
)
**AND** )
)
**TONYA CHISMAN** )
**3584 TOWNSEND ROAD** )
**LYNCHBURG, OH 45142** )
)
**AND** )
)
**JENNA CLARK** )
**11369 NEW BIDDINGER RD.** )
**HARRISON, OH 45030** )
)
**AND** )
)
**JESSICA COCHRAN** )
**5518 JANDEL DRIVE** )
**AURORA, IN 47001** )
)
**AND** )
)
**TERRY COLLINS** )
**256 ERLANGER ROAD** )
**ERLANGER, KY 41018** )
)
**AND** )
)
**ELIZABETH COMPO** )
**9069 BRAXTON DRIVE** )
**UNION, KY 41091** )
)
**AND** )
)
**DAVID CONGER** )
**653 KATHRYN DRIVE** )
**WILMINGTON, OH 45177** )
)
**AND** )
)
**KENNETH CONGER** )
**653 KATHRYN DRIVE** )
**WILMINGTON, OH 45177** )

**AND** )

**BRENDA CONLEY** )
**2468 CHERRY STREET #1** )
**CRESCENT SPRINGS, KY 41017** )

**AND** )

**LISA CONLEY** )
**38 ASH STREET** )
**LUDLOW, KY 41016** )

**AND** )

**FRANCENE COOK** )
**3010 MELROSE AVE. #1** )
**CINCINNATI, OH 45206** )

**AND** )

**MICHAEL COOK** )
**161 MIDWAY DRIVE** )
**WILMINGTON, OH 45177** )

**AND** )

**GARY L. COOTS** )
**14387 DIXON RD.** )
**MORNINGVIEW, KY 41063** )

**AND** )

**JANET CORNETT** )
**147 BENT TREE DR.** )
**COVINGTON, KY 41017** )

**AND** )

**CAROLYN SIERMERING,** )
**ADMINISTRATRIX OF THE ESTATE** )
**OF BARBARA COUCH** )
**750 GRAND AVE APT 408** )
**CINCINNATI. OH 45205** )

**AND** )

**TIM COUCH, ADMINISTRATOR**                    )
**OF THE ESTATE OF JACKIE COUCH**               )
**9099 MARSH WILLOW COURT**                     )
**WEST CHESTER, OH 45069**                      )
                                                )
**AND**                                         )
                                                )
**KRISTA COX**                                  )
**2717 N LUTHERAN CHURCH RD.**                  )
**DAYTON, OH 45426**                            )
                                                )
**AND**                                         )
                                                )
**MICHAEL CRAIL**                               )
**1887 HAPPY VALLEY DR.**                       )
**FAIRFIELD OH, 45014**                         )
                                                )
**AND**                                         )
                                                )
**KAREN CRISSINGER**                            )
**1228 WEST CLARK STREET**                      )
**SPRINGFIELD, OH 45177**                       )
                                                )
**AND**                                         )
                                                )
**JOI CROWE**                                   )
**1203 ANTHONY LANE**                           )
**MASON, OH 45040**                             )
                                                )
**AND**                                         )
                                                )
**AMBER CROXSON**                               )
**11664 VISES TRAIL**                           )
**COVINGTON, KY 41015**                         )
                                                )
**AND**                                         )
                                                )
**JAMES CUZZORT**                               )
**222 MULBERRY STREET**                         )
**RISING SUN, IN  47040**                       )
                                                )
**AND**                                         )
                                                )
**WILLIAM DABNEY**                              )
**1818 HEWITT AVE.**                            )

12

CINCINNATI, OH 45207 )
 )
AND )
 )
TAMMY DALE )
439 MORROW ROAD, LOT 79 )
SOUTH LEBANON, OH 45065 )
 )
AND )
 )
JOSEPH DAVIS )
3635 KOHN DRIVE #4201 )
FAIRFIELD, OH 45015 )
 )
AND )
 )
ELIZABETH DAVIS, ADMINISTRATOR)
OF THE ESTATE OF NELLIE DAVIS )
97 BROOKWOOD DRIVE )
WALTON, KY 41094 )
 )
AND )
 )
RALPH DAWSON )
209 APPLE VALLEY DRIVE )
LEWISBERG, OH 45338 )
 )
AND )
 )
OLLIE DEATON )
310 GLASS DRIVE )
CORINTH, KY 41010 )
 )
AND )
 )
STEFANIE DEATON )
11274 GRAVEN ROAD )
WALTON, KY 41094 )
 )
AND )
 )
DAMON DECK )
6611 ELGIN COURT )
BURLINGTON, KY 41005 )
 )
AND )

**SANDRA DENNIS**      )
**1083 BROADVIEW PL.**    )
**MILFORD, OH 45150**     )
               )
**AND**            )
               )
**CAROLYN DOTSON**     )
**3797 TRENTON ROAD**    )
**HAMILTON, OH 45011**    )
               )
**AND**            )
               )
**DEBORAH DOYLE**      )
**2739 WEST NORTH BEND ROAD,** )
**APT. #1**          )
**CINCINNATI, OH 45239**    )
               )
**AND**            )
               )
**AMANDA DRADT**      )
**1568 SELKIRK RD.**      )
**COLUMBUS, OH 43227**    )
               )
**AND**            )
               )
**DOUGLAS DRAFTS**      )
**100 E. CENTRAL PARKWAY #413** )
**CINCINNATI, OH 45202**    )
               )
**AND**            )
               )
**PATRICK DUGAN**      )
**1239 SPOTTED FAWN RUN**   )
**MILFORD, OH 45150**     )
               )
**AND**            )
               )
**BILLY DUGGER**       )
**137 MINEER ROAD**      )
**LYNCHBURG, OH 45142**    )
               )
**AND**            )
               )
**DAWN DUNKLIN**      )
**4249 SKYLARK DRIVE**    )

14

CINCINNATI, OH 45238   )
        )
AND       )
        )
GWEN EARLS, ADMINISTRATOR )
OF THE ESTATE OF   )
DARRELL EARLS   )
4115 KY HWY 16   )
GLENCOE, KY 41046   )
        )
AND       )
        )
CHRIS EBBING    )
3987 JANWARD DR.   )
CINCINNATI, OH 45211  )
        )
AND       )
        )
MONA EDER    )
1492 TUSCAN COURT   )
FLORENCE, KY 41042   )
        )
AND       )
        )
KEVIN ELFERS    )
928 BRIARWOOD COURT  )
MASON, OH 45040   )
        )
AND       )
        )
HENRY CURRY, ADMINISTRATOR )
OF THE ESTATE OF   )
CONNIE MCCLURE-ELLINGTON )
260 HAMMOND LANE   )
CORINTH, KY 41010   )
        )
AND       )
        )
HENRY CURRY, ADMINISTRATOR )
OF THE ESTATE OF   )
ROBERT ELLINGTON   )
260 HAMMOND LANE   )
CORINTH, KY 41010   )
        )
AND       )
        )

15

**RICHARD ELLIOTT** )
**120 BARTLETT AVENUE** )
**ERLANGER, KY 41018** )
)
**AND** )
)
**KELLY ENGLE** )
**2595 ONTARIO ST.** )
**CINCINNATI, OH 45231** )
)
**AND** )
)
**BRENDA ERRGANG** )
**PO BOX 40** )
**PERRY PARK, KY 40363** )
)
**AND** )
)
**TRACY ESSELMAN** )
**90 FAIRLAND AVE** )
**WILMINGTON, OH 45177** )
)
**AND** )
)
**MARGIE EVERSOLE** )
**303 WEST HIGH STREET** )
**WARSAW, KY 41085 APT.#4** )
)
**AND** )
)
**ARLENE FAIT** )
**10174 BURLEIGH LANE** )
**UNION, KY 41091** )
)
**AND** )
)
**LINDA FAVARON, EXECUTOR OF** )
**THE ESTATE OF NEIL FAVARON,** )
**136 SOUTH MASON-MONTGOMERY** )
**ROAD** )
**MASON, OH 45040** )
)
**AND** )
)
**CAELA FINNELL** )
**704 BEAR COURT** )

16

**INDEPENDENCE, KY 41051** )
)
**AND** )
)
**MARK FITZPATRICK** )
**6163 SQUIRRELWOODS LN.** )
**CINCINNATI, OH 45247** )
)
**AND** )
)
**FRANCINE FORD** )
**1214 RYLAND AVENUE** )
**CINCINNATI, OH 45237** )
)
**AND** )
)
**LENNIE FOSSETT** )
**5617 DOERGER LANE** )
**CINCINNATI, OH 45212** )
)
**AND** )
)
**AMANDA FRANKS** )
**651 RUTLAND ROAD** )
**CYNTHIANA, KY 41031** )
)
**AND** )
)
**JOANN FRAZIER** )
**2516 PEKIN ROAD** )
**SPRINGBORO, OH 45066** )
)
**AND** )
)
**AMY FULLER** )
**401 DEER TRACE** )
**WALTON, KY 41094** )
)
**AND** )
)
**JUDITH GARDNER** )
**9494 ST. RT. 136** )
**WEST UNION, OH 45693** )
)
**AND** )
)

17

**ERMA GILBERT** )
**2523 HARRIS PIKE** )
**INDEPENDENCE, KY 41051** )
)
**AND** )
)
**SARA GODBY** )
**1702 MAPLE GROVE RD.** )
**MT. ORAB, OH 45154** )
)
**AND** )
)
**CHRISTINE GOLDSTEIN** )
**1422 ASCHINGER BLVD.** )
**COLUMBUS, OH 43212** )
)
**AND** )
)
**THOMAS HOPKINS, EXECUTOR OF** )
**THE ESTATE OF DONNA GOOD** )
**636 ELLIOTT AVENUE** )
**CINCINNATI, OH 45215** )
)
**AND** )
)
**GREG GRABER** )
**3314 MEADOW GREEN COURT** )
**AMELIA, OH 45102** )
)
**AND** )
)
**MAURICE GRABOW** )
**13208 RYLE ROAD** )
**UNION, KY 41091** )
)
**AND** )
)
**ERIN GREELISH** )
**1915 EMORY COURT** )
**HEBRON, KY 41048** )
)
**AND** )
)
**ROBBIE GREGORY** )
**3899 SCHROEDER DRIVE** )
**HAMILTON, OH 45011** )

AND        )

SUSAN GRIFFIN    )
4915 ANDREW STREET  )
ST. BERNARD, OH 45217  )

AND        )

JENNY GRIMM     )
134 GARVEY AVENUE   )
ELSMERE, KY 41018   )

AND        )

MELISSA HABERMEHL  )
3184 VERONA-MUDLICK ROAD )
VERONA, KY 41092    )

AND        )

LYNN HALEY     )
12968 WYNEWOOD TRAIL  )
INDEPENDENCE, KY 41051  )

AND        )

DAVID HALL, ADMINISTRATOR )
OF THE ESTATE OF LISA HALL )
13005 WYNEWOOD TRAIL  )
INDEPENDENCE, KY 41051  )

AND        )

RUHAMA HALL     )
31 COUNTY SEAT    )
BATAVIA, OH 45103    )

AND        )

DOROTHEA HAMILTON   )
1228 STATE ROUTE 380   )
WILMINGTON, OH 45177   )

AND        )

**COURTNEY HAMMONS**     )
**312 ROSS AVENUE, APT. 3**     )
**HAMILTON, OH 45013**     )
     )
**AND**     )
     )
**TIMOTHY HANNON**     )
**181 MILLVILLE-OXFORD ROAD**     )
**HAMILTON, OH 45013**     )
     )
**AND**     )
     )
**KEVIN HARTNESS**     )
**1070 BETHEL NEW RICHMOND RD.**     )
**APT. 15**     )
**NEW RICHMOND, OH 45157**     )
     )
**AND**     )
     )
**JESSICA HASTINGS**     )
**6655 SHADY OAK LANE**     )
**MASON, OH 45040**     )
     )
**AND**     )
     )
**WAYNE HATFIELD**     )
**13 CEDAR DRIVE**     )
**STERLING, VA 20164**     )
     )
**AND**     )
     )
**SARA HAUENSTEIN**     :
**600 NW 80TH AVENUE**     )
**OCALA, FL 34482**     )
     )
**AND**     )
     )
**DOUGLAS HAYES, SR.**     )
**2900 ARMCO DR.**     )
**MIDDLETOWN, OH 45042**     )
     )
**AND**     )
     )
**LESLIE POWERS, ADMINISTRATOR**  )
**FOR THE ESTATE OF**     )
**HEATHER HEFFNER**     )

20

**3815 HAMILTON-MASON ROAD** )
**HAMILTON, OH 45011** )
)
**AND** )
)
**DENISE HELTON** )
**1206 2ND STREET** )
**READING, OH 45215** )
)
**AND** )
)
**EVELYN HELTON** )
**6855 MORROW-ROSSBURG ROAD** )
**MORROW, OH 45152** )
)
**AND** )
)
**THERESA HELTON** )
**4700 WEST FORK ROAD** )
**CINCINNATI, OH 45247** )
)
**AND** )
)
**DEBRA HENDERSON** )
**765 SANDERS DRIVE** )
**HAMILTON, OH 45013** )
)
**AND** )
)
**KELLY HENNESSY** )
**4226 TURRILL STREET** )
**CINCINNATI, OH 45223** )
**AND** )
)
**BARBARA HENSLEY** )
**12063 DECKER** )
**RICHWOOD, KY 41094** )
)
**AND** )
)
**RYAN HENSLEY** )
**6298 E. HIGHWAY 221** )
**BLEDSOE, KY 40810** )
)
**AND** )
)

21

**KAREN HIGGINBOTHAN**    )
**167 BARABOO**    )
**LIBERTY TOWNSHIP, OH 45011**    )
     )
**AND**    )
     )
**MICHAEL HILLARD**    )
**9337 CINCINNATI PIKE**    )
**CORINTH, KY 41010**    )
     )
**AND**    )
     )
**DIRK HITCHCOCK**    )
**10425 KIMBERLY DRIVE**    )
**FLORENCE, KY 41042**    )
     )
**AND**    )
     )
**CELESTE HOFFMAN**    )
**13 YEALEY DRIVE**    )
**FLORENCE, KY 41042**    )
     )
**AND**    )
     )
**LORETTA HON**    )
**320 HWY. 227 N.**    )
**NEW LIBERTY, KY 40355**    )
     )
**AND**    )
     )
**CHELSEA HORTMAN**    )
**3414 TURTLECREEK ROAD**    )
**LEBANON, OH 45036**    )
     )
**AND**    )
     )
**RICKY HOUNCHELL**    )
**1204 GREENWOOD AVENUE**    )
**HAMILTON, OH 45011**    )
     )
**AND**    )
     )
**KATHRYN HOWELL**    )
**1355 CASON LAND**    )
**DRY RIDGE, KY 41035**    )
     )

**AND**                                      )
                                             )
**GERBUS, MARY, AS**                         )
**ADMINISTRATRIX OF THE ESTATE**             )
**OF LOIS HUGHES**                           )
**986 E. CRESCENTVILLE ROAD**                )
**CINCINNATI, OH 45246**                     )
                                             )
**AND**                                      )
                                             )
**TAMMY HUGHES**                             )
**9042 SUPREME COURT**                       )
**INDEPENDENCE, KY 41051**                   )
                                             )
**AND**                                      )
                                             )
**CAROLYN HURSONG**                          )
**3464 HOLLYGLEN COURT**                     )
**CINCINNATI, OH 45251**                     )
                                             )
**AND**                                      )
                                             )
**DAVID HUSER, AS EXECUTOR**                 )
**OF THE ESTATE OF CONNIE HUSER**            )
**9148 TAG DRIVE**                           )
**CINCINNATI, OH 45231**                     )
                                             )
**AND**                                      )
                                             )
**GEORGE HUTCHINSON**                        )
**3951 WEST 8TH STREET**                     )
**CINCINNATI, OH 45205**                     )
                                             )
**AND**                                      )
                                             )
**MARTHA HUTTON**                            )
**9520 AMBLESIDE DRIVE**                     )
**CINCINNATI, OH 45241**                     )
                                             )
**AND**                                      )
                                             )
**ANDREA DAILEY, EXECUTOR OF**               )
**THE ESTATE OF IRENE HYDE**                 )
**105 CRYSTAL LAKE DRIVE**                   )
**COVINGTON, KY 41017**                      )
                                             )

**AND**                                         )
                                                )
**JEFFREY HYDE**                                )
**105 CRYSTAL LAKE DRIVE**                       )
**COVINGTON, KY 41017**                          )
                                                )
**AND**                                         )
                                                )
**ELSA IERACI**                                 )
**11815 NEUSS AVENUE**                           )
**CINCINNATI, OH 45246**                         )
                                                )
**AND**                                         )
                                                )
**ALYSSA JACKSON**                              )
**6118 LANCASHIRE TRAIL.**                       )
**LIBERTY TOWNSHIP**                             )
**OH 45044**                                    )
                                                )
**AND**                                         )
                                                )
**STEPHANIE JOBE**                              )
**16602 SELL CIRCLE #41**                        )
**HUNTINGTON BEACH, CA 92649**                   )
                                                )
**AND**                                         )
                                                )
**CHELSEA JOHNSON**                             )
**1616 GARRARD STREET**                          )
**COVINGTON, KY 41014**                          )
                                                )
**AND**                                         )
                                                )
**ROGER JOHNSON**                               )
**5261 RIVER ROAD**                              )
**FAIRFIELD, OH 45014**                          )
                                                )
**AND**                                         )
                                                )
**RACHEL JONES**                                )
**1553 PULLAN AVENUE**                           )
**CINCINNATI, OH 45223**                         )
                                                )
**AND**                                         )
                                                )
**JACQUELINE JUDKINS**                          )

24

**6779 YOAKUM COURT** )
**LIBERTY TOWNSHIP, 45044** )
)
**AND** )
)
**MCCAUGHEY, CHRISTOPHER, AS** )
**ADMINISTRATOR OF** )
**THE ESTATE OF SARAH JUERGENS** )
**9592 BROWER ROAD** )
**NORTH BEND, OH 45052** )
)
**AND** )
)
**CATHY HOLLEY, ADMINISTRATRIX** )
**OF THE ESTATE OF** )
**LINDA KALLMEYER-WARD** )
**12000 WESTERLY DRIVE** )
**CINCINNATI, OH 45231** )
)
**AND** )
)
**KATELYN KAUFFMAN** )
**572 PEDRETTI AVE.** )
**CINCINNATI, OH 45238** )
)
**AND** )
)
**THOMAS KELLISON** )
**1100 CASTLEBAY DRIVE** )
**CINCINNATI, OH 45245** )
)
**AND** )
)
**MICHELLE KEPLINGER** )
**170 WIDEVIEW DRIVE** )
**SPARTA, KY 41086** )
)
**AND** )
)
**MARTHA KIBLER** )
**9078 CANAL WAY** )
**WEST CHESTER, OH 45069** )
)
**AND** )
)
**DEBORAH KIDD** )

25

**1625 ASMAN AVENUE**    )
**CINCINNATI, OH 45229**    )
    )
**AND**    )
    )
**SHERRY KIDD**    )
**12 CHERRYWOOD LANE**    )
**ALEXANDRIA, KY 41001**    )
    )
**AND**    )
    )
**VIVIAN KIEFER**    )
**742 MILLSTREAM DR.**    )
**TAYLOR MILL, KY 41015**    )
    )
**AND**    )
    )
**CHARLOTTE KING**    )
**1358 AMMERMAN LANE**    )
**FALMOUTH, KY 41040**    )
    )
**AND**    )
    )
**ROSE KOEHLER**    )
**7060 MAUD HUGHES ROAD**    )
**HAMILTON, OH 45011**    )
    )
**AND**    )
    )
**SHANNON KOEHLER**    )
**135 MONTCLAIR STREET**    )
**LUDLOW, KY 41016**    )
    )
**AND**    )
    )
**VALARIE KOPP**    )
**14216 DECOURSEY PIKE**    )
**MORNING VIEW, KY 41063**    )
    )
**AND**    )
    )
**LARRY KRECH**    )
**725 COACHWAY COURT**    )
**TAYLOR MILL, KY 41015**    )
    )
**AND**    )

**VICTORIA LANDRUM**  )
**10357 BANKLICK RD.**  )
**WALTON, KY 41094**  )
   )
**AND**  )
   )
**KAREN LEGER**  )
**1812 MOREY AVENUE**  )
**HAMILTON, OH 45011**  )
   )
**AND**  )
   )
**SANDRA LEMMEL**  )
**6671 TRADITION TRAIL**  )
**MASON, OH 45040**  )
   )
**AND**  )
   )
**AILENE LEVAN**  )
**675 EUCLID STREET**  )
**CRESCENT SPRINGS, KY 410171**  )
   )
**AND**  )
   )
**HILLARY LEVANDOFSKY**  )
**1645 WEST MAIN #2**  )
**WILMINGTON, OH 45177**  )
   )
**AND**  )
   )
**LYNNE LIST**  )
**3617 TAMBER RIDGE DRIVE**  )
**COVINGTON, KY 41015**  )
   )
**AND**  )
   )
**TAMMIE LITTLE**  )
**290 PRARIE AVENUE, APT. 208**  )
**WILMINGTON, OH 45177**  )
   )
**AND**  )
   )
**TAMALA LOVETTE**  )
**485 DEWDROP CIRCLE, UNIT D**  )
**CINCINNATI, OHIO 45240**  )

```
                                            )
AND                                         )
                                            )
KENNETH MAHLENKAMP                          )
113 GRANT ST.                               )
FT. THOMAS, KY 41075                        )
                                            )
AND                                         )
                                            )
SHIRLEY MAINS                               )
3526 SHADYSIDE DRIVE                        )
ERLANGER, KY 41018                          )
                                            )
AND                                         )
                                            )
VICKY MAINS                                 )
97 ABBEYWOOD DRIVE APT. 307                 )
FALMOUTH, KY 41040                          )
                                            )
AND                                         )
                                            )
MARSHA MARTIN                               )
2532 DALE CT                                )
FT. MITCHELL, KY 41017                      )
                                            )
AND                                         )
                                            )
STACY JOHN MARTIN                           )
1875 HWY 127                                )
WARSAW, KY 41095                            )
                                            )
AND                                         )
                                            )
ROBERT MASTERS                              )
5955 FURLONG WAY                            )
HAMILTON, OH 45011                          )
                                            )
AND                                         )
                                            )
TRACI MATHEWS                               )
694 BLUEBIRD LANE                           )
CINCINNATI, OHIO 45244                      )
                                            )
AND                                         )
                                            )
ALAN MATTHEWS                               )
```

28

**5986 WATOGA DRIVE** )
**LIBERTY TOWNSHIP, OH 45011** )
)
**AND** )
)
**KIMBERLY MAYER** )
**3535 E TAYLOR SCHOOL ROAD** )
**HAMILTON, OH 45011** )
)
**AND** )
)
**DEREK MAYFIELD** )
**455 SQUIRESVILLE RD.** )
**OWENTON, KY 40359** )
)
**AND** )
)
**JENNA MCCALL** )
**4010 HAMMOND BLVD** )
**HAMILTON, OH 45015** )
)
**AND** )
)
**FLETCHER, STACY, AS EXECUTRIX** )
**OF THE ESTATE OF** )
**JEFFREY MCCLURE** )
**1860 HEATHEN RIDGE ROAD** )
**CRITTENDEN, KY 41030** )
)
**AND** )
)
**KEVIN MCDONALD** )
**1073 CLOUGH PIKE** )
**CINCINNATI, OH 45245** )
)
**AND** )
)
**WHITNEY MCKENZIE** )
**601 WAYCROSS RD.** )
**CINCINNATI, OH 45240** )
)
**AND** )
)
**TERESA MCMILLEN** )
**10616 CINDERELLA DRIVE** )
**MONTGOMERY, OH 45242** )

)
**AND** )
)
**MARK MCMURREN** )
**89 EAST MEADOW DRIVE** )
**BATAVIA, OH 45103** )
)
**AND** )
)
**KAMERON MCNEAL** )
**110141 WEST ROAD #3** )
**HARRISON, OH 45013** )
)
**AND** )
)
**KERRY MCNEAL** )
**4114 RACE LANE ROAD** )
**OKEANA, OH 45033** )
)
**AND** )
)
**TONIA MCQUEARY** )
**6342 LAKE RIDGE COURT** )
**LOVELAND, OH 45140** )
)
**AND** )
)
**TIFFANY MEADOWS** )
**1045 GOODMAN AVENUE** )
**HAMILTON, OH 45013** )
)
**AND** )
)
**DAWN MERLAND** )
**17 ORCHARD AVE.** )
**CINCINNATI, OH 45215** )
)
**AND** )
)
**RANDALL METCALF** )
**7513 NED COURT** )
**CARLISLE, OH 45005** )
)
**AND** )
)
**DIANE MEYER** )

**5279 PONDEROSA DRIVE** )
**CINCINNATI, OH 45239** )
)
**AND** )
)
**KAREN MILLER** )
**993 SOUTHRIDGE AVENUE** )
**WILMINGTON, OH 45177** )
)
**AND** )
)
**RYAN MILLER** )
**10949 THORNVIEW DRIVE** )
**CINCINNATI, OH 45241** )
)
**AND** )
)
**VERA MOFFITT** )
**771 COLBERT CIRCLE** )
**CINCINNATI, OH 45240** )
)
**AND** )
)
**BILLIE JANE MOORE** )
**2525 LEMON NORTHCUTT ROAD** )
**DRY RIDGE, KY 41035** )
)
**AND** )
)
**DEBBIE MOORE** )
**8174 SMITH ROAD** )
**BROOKEVILLE, IN 47012** )
)
**AND** )
)
**DONALD MOORE** )
**267 CRITTENDEN MT. ZION ROAD** )
**DRY RIDGE, KY 41035** )
)
**AND** )
)
**ROBERT MOORE** )
**274 PRAIRIE AVENUE** )
**WILMINGTON, OH 45177** )
)
**AND** )

31

**TIM MOORE**                                )
**425 SILVERLAKE AVE.**                       )
**ERLANGER, KY 41018**                        )
                                             )
**AND**                                       )
                                             )
**WILLIAM MOORE**                             )
**11377 MOUNT VERNON DRIVE**                  )
**DUNCANVILLE, AL 35456**                     )
                                             )
**AND**                                       )
                                             )
**JEFF NEU, EXECUTOR OF THE**                 )
**ESTATE OF GARY NEU**                        )
**6831 PARKLAKE DR.**                         )
**MASON, OH 45040**                           )
                                             )
**AND**                                       )
                                             )
**MARJORIE NEWMAN**                           )
**355 SECOND STREET**                         )
**MORROW, OH 45152**                          )
                                             )
**AND**                                       )
                                             )
**MICHELLE NOBLE**                            )
**3104 CARTHAGE RD**                          )
**CALIFORNIA, KY 41007**                      )
                                             )
**AND**                                       )
                                             )
**DONNA BOEHM, ADMINISTRATOR**                )
**OF THE ESTATE GAIL NORDEMAN**               )
**15031 PUNTA RASSA RD**                      )
**#503**                                      )
**FT. MYERS, FL 33908**                       )
                                             )
**AND**                                       )
                                             )
**RUVIMBO NYEMBA**                            )
**4131 ST MARTIN PLACE**                      )
**CINCINNATI, OH 45211**                      )
                                             )
**AND**                                       )
                                             )

32

**WENDY OBERLANDER**     )
**6910 EVANSTON AVE.**     )
**MUSKEGON, MI 49442**     )
     )
**AND**     )
     )
**TIMOTHY OSBORN**     )
**57 E MAIN STREET, UNIT B**     )
**CLARKSVILLE, OH 45113**     )
     )
**AND**     )
     )
**DANNIE OWENS**     )
**1090 LOVELAND-MADEIRA ROAD, #10**
**LOVELAND, OH 45140**     )
     )
**AND**     )
     )
**HALEY PAYNE**     )
**1680 BIG THREE MILE ROAD**     )
**ABERDEEN, OH 45101**     )
     )
**AND**     )
     )
**JEFF PEDDICORD**     )
**3657 MILLS ROAD**     )
**INDEPENDENCE, KY 41051**     )
     )
**AND**     )
     )
**DUANE PELFREY**     )
**950 SHEFFIELD DR.**     )
**MASON, OH 45040**     )
     )
**AND**     )
     )
**PFETSCH, NANCY, AS EXECUTRIX**     )
**OF THE ESTATE OF**     )
**KENNETH PFETSCH**     )
**4832 BRIDGE LANE, APT. 1**     )
**MASON, OH 45040**     )
     )
**AND**     )
     )
**CLARENCE PHILLIPS**     )
**28 HEARTHSTONE COURT**     )

**FLORENCE, KY 41042** )

**AND** )

**HEATHER PICKETT** )
**207 PRUYN STREET** )
**AURORA, IN 47001** )

**AND** )

**JEFFREY POFF** )
**181 RICHARDSON PL.** )
**CINCINNATI, OH 45233** )

**AND** )

**SHEILA POGUE-KRABACHER** )
**1287 WEST MAIN STREET** )
**WILMINGTON, OH 45177** )

**AND** )

**BRYAN POWERS** )
**335 SOUTH FORK RD** )
**VERONA, KY 41092** )

**AND** )

**KATHERINE PRATER** )
**11497 BASIL RD NW** )
**BALTIMORE, OH 43105** )

**AND** )

**TOM PRITCHARD, AS EXECUTOR** )
**OF THE ESTATE OF** )
**SHARON PRITCHARD** )
**8372 JUNIPER LANE** )
**FLORENCE, KY 41042** )

**AND** )

**CAROL PUMMELL** )
**129 MAYS DRIVE** )
**SABINA, OH 45169** )

AND                                            )
                                               )
MISTY EMERSON AS                               )
ADMINISTRATOR OF THE ESTATE                    )
OF MARCIA QUINN                                )
817 SANDERS DRIVE                              )
HAMILTON, OH 45013                             )
                                               )
AND                                            )
                                               )
SANDRA RADEKE                                  )
6810 JERSEY AVENUE                             )
SAILOR PARK, OH 45233                          )
                                               )
AND                                            )
                                               )
MARGARET RADENHEIMER                           )
204 WEST HARRISON AVENUE                       )
WEST HARRISON, IN 47060                        )
                                               )
AND                                            )
                                               )
LYNN RAY, EXECUTOR OF THE                      )
ESTATE OF TODD RAY                             )
13118 ALEXANDRIA PIKE                          )
BUTLER, KY 41006                               )
                                               )
AND                                            )
                                               )
DANIELLE REED                                  )
453 MILLVILLE ROAD                             )
HAMILTON, OH 45013                             )
                                               )
AND                                            )
                                               )
MARK REED                                      )
103 CASTANEA DRIVE                             )
MASON, OH 45040                                )
                                               )
AND                                            )
                                               )
VALERIE REEVES                                 )
4915 MARATHON EDENTON ROAD                     )
WILLIAMSBURG, OH 45176                         )
                                               )
AND                                            )

|  | ) |
| **CIERA BARR,** | ) |
| **ADMINISTRATOR OF THE ESTATE** | ) |
| **OF HOLLY REIFENBERGER** | ) |
| **6 POTOMAC COURT** | ) |
| **LOVELAND, OHIO 45140** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **JEFF REMLEY** | ) |
| **6819 EAST PLUM STREET** | ) |
| **CINCINNATI, OH 45244** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **NIETHSA BARRON-MYLES,** | ) |
| **ADMINISTRATRIX OF THE ESTATE** | ) |
| **OF HARRY REYNOLDS** | ) |
| **601 MAPLE AVENUE** | ) |
| **CINCINNATI, OH 45229** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **LISA REYNOLDS** | ) |
| **951 ALLY WAY** | ) |
| **INDEPENDENCE, KY 41051** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **JORDAN RIBARIU** | ) |
| **8045 REMINGTON ROAD** | ) |
| **CINCINNATI, OH 45242** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **JOHN RICHARDSON** | ) |
| **396 HAMPSHIRE** | ) |
| **HAMILTON, OH 45011** | ) |
|  | ) |
| **AND** | ) |
|  | ) |
| **JASON RILEY, ADMINISTRATOR** | ) |
| **OF THE ESTATE OF JASON RILEY** | ) |
| **884 GORDON SMITH BLVD., #9** | ) |
| **HAMILTON, OH 45103** | ) |
|  | ) |

**AND**                                                  )
                                                         )
**DEBORAH ROARK**                                        )
**1176 DENNIS LANE 32**                                  )
**HAMILTON OH, 45013**                                   )
                                                         )
**AND**                                                  )
                                                         )
**THERESA ROBBINSON-WOODS**                              )
**750 GRAND AVENUE #411**                                )
**CINCINNATI, OH 45205**                                 )
                                                         )
**AND**                                                  )
                                                         )
**RAYMOND ROBERTS**                                      )
**5811 CROSLIN ST.**                                     )
**CINCINNATI, OH 45230**                                 )
                                                         )
**AND**                                                  )
                                                         )
**KELLY ROBINSON**                                       )
**1350 SCOTT STREET, APT. #2**                           )
**COVINGTON, KY 41011**                                  )
                                                         )
**AND**                                                  )
                                                         )
**DEBBIE RODRIGUEZ**                                     )
**834 KY HIGHWAY 19**                                    )
**CYNTHIANA, KY 41031**                                  )
                                                         )
**AND**                                                  )
                                                         )
**JASON ROMER**                                          )
**3438 MAPLE TREE LANE**                                 )
**ERLANGER, KY 41018**                                   )
                                                         )
**AND**                                                  )
                                                         )
**DOROTHY ROSE**                                         )
**313 KENEC DRIVE**                                      )
**MIDDLETOWN, OH 45042**                                 )
                                                         )
**AND**                                                  )
                                                         )
**SANDRA ROUNDTREE**                                     )
**2037 FRANKLIN STREET, #A**                             )

37

**COVINGTON, KY 41014** )
)
**AND** )
)
**RONALD ROWLEY** )
**420 BELLBROOK AVE,** )
**APT I** )
**XENIA, OHIO 45385** )
)
**AND** )
)
**CARMEN, STEPHEN, AS** )
**ADMINISTRATOR OF THE** )
**ESTATE OF KATHRYNN RUEVE** )
**4124 VINEDALE AVENUE** )
**CINCINNATI, OH 45205** )
)
**AND** )
)
**ROBERT RUNTZ** )
**1 MAIN STREET, APT. F4** )
**P.O. BOX 625** )
**ADDYSTON, OH 45001** )
)
**AND** )
)
**MICHAEL SAND** )
**3270 RECTOR ROAD** )
**MORNINGVIEW, KY 41063** )
)
**AND** )
)
**CHRIS SCHEPER** )
**1859 PRINCESS CT** )
**HEBRON, KY 41048** )
)
**AND** )
)
**ROBIN SCHILLER** )
**524 PATTERSON COURT** )
**LEBANON, OH 45036** )
)
**AND** )
)
**JOSEPH SCHIMMEL** )
**185 KNAPP DRIVE** )

**HAMILTON, OH 45013**     )
               )
**AND**            )
               )
**KEVIN SCHMIT**       )
**5490 CANNAS DRIVE**     )
**CINCINNATI, OH 45238**    )
               )
**AND**            )
               )
**PATRICK SCHMIT**      )
**2778 TOLBERT RD.**      )
**HAMILTON, OH 45011**    )
               )
**AND**            )
               )
**SUSAN SCHOCK**      )
**5113 GARDEN GROVE LANE**  )
**CINCINNATI, OHIO   45238**  )
               )
**AND**            )
               )
**PAUL SCHOLZ**       )
**210 MARTIN AVENUE**    )
**TRENTON, OH 45067**     )
               )
**AND**            )
               )
**ANDREW SCHULTZ**     )
**25809 EASY WAY DRIVE**   )
**GUILFORD, IN 47022**     )
               )
**AND**            )
               )
**TIMOTHY SCHULZE**     )
**6150 BURLINGTON PIKE**   )
**BURLINGTON, KY 41005**   )
               )
**AND**            )
               )
**RONALD SCHUSTER**     )
**903 SHAYLER ROAD**     )
**CINCINNATI, OH 45245**    )
               )
**AND**            )
               )

**MARIE BENTLEY, ADMINISTRATRIX** )
**OF THE ESTATE OF DELORES SCOTT** )
**124 PAMELA DRIVE #105** )
**MORROW, OH 45152** )
)
**AND** )
)
**RHONDA SCOTT** )
**421 OAK GROVE ROAD** )
**MARTINSVILLE, OH 45146** )
)
**AND** )
)
**GLENNA SHAFER** )
**3151 RIVER ROAD** )
**CINCINNATI, OH 45204** )
)
**AND** )
)
**SHANDON SIMMONS** )
**16 CHASE DRIVE** )
**CENTERVILLE, OH 45458** )
)
**AND** )
)
**KAREN SISSON** )
**2219 DREX AVE.** )
**CINCINNATI, OH 45212** )
)
**AND** )
)
**MICHELLE SIZEMORE** )
**4165 MT. CARMEL-TOBASCO RD.** )
**#8** )
**CINCINNATI, OH 45255** )
)
**AND** )
)
**WARREN, HALEY, AS** )
**ADMINISTRATOR OF THE ESTATE** )
**OF CRYSTAL SLONE** )
**10519 MARSHALL ROAD** )
**LATONIA, KY 41015** )
)
**AND** )
)

40

**DAVID SMITH** )
**2504 HIGHWAY 62** )
**APT. 4** )
**POCAHONTAS, ARKANSAS 72455** )
)
**AND** )
)
**DONALD SMITH** )
**2537 WARREN STREET** )
**COVINGTON, KY 41014** )
)
**AND** )
)
**DAVID SNIDER** )
**590 ROBERTSON RD.** )
**FELICITY, OH 45120** )
)
**AND** )
)
**SHERRIE SPANGENBERG** )
**4493 DEVON COURT** )
**MASON, OH 45040** )
)
**AND** )
)
**CRYSTAL GARRISON,** )
**ADMINISTRATRIX OF THE ESTATE** )
**OF BILLY SPIVY** )
**310 RICE DRIVE, APT. 18** )
**WEST UNION, OH 45693** )
)
**AND** )
)
**FISHER, DAVID, AS ADMINISTRATOR** )
**OF THE ESTATE OF** )
**MICHELLE STEPHENS** )
**3719 JACQUELINE DRIVE** )
**ERLANGER, KY 41018** )
)
**AND** )
)
**TEMPIE STEPHENSON** )
**310 RICE DR., APT. 9** )
**WEST UNION, OH 45693** )
)
**AND** )

**DARLENE STERLING**     )
**558 GARNER CT**      )
**COVINGTON, KY 41015**    )
             )
**AND**          )
             )
**BERT STIDHAM**      )
**923 DON VICTOR**     )
**INDEPENDENCE, KY 41051**   )
             )
**AND**          )
             )
**DEBORAH STURDIVANT**   )
**PO BOX 255**       )
**DRY RIDGE, KY 41035**    )
             )
**AND**          )
             )
**KAREN TAYLOR**     )
**3217 17TH STREET SW**    )
**LEHIGH ACRES, FL 33976**   )
             )
**AND**          )
             )
**KATHLEEN TESLCHER**    )
**5719 HARVEY CIRCLE**    )
**CINCINNATI, OH 45233**    )
             )
**AND**          )
             )
**BENJAMIN THAELER**    )
**8387 MAY AVENUE**     )
**MIDDLETOWN, OH 45042**   )
             )
**AND**          )
             )
**BRIAN THIEN**      )
**7750 OTTAWA LANE, #158**   )
**WEST CHESTER OH 45069**   )
             )
**AND**          )
             )
**EDWARD THIESSEN**     )
**1602 SUMMIT HILLS DRIVE**   )
**CINCINNATI, OH 45255**    )

)
**AND**                                         )
)
**ASHISHA WALLACE,**                            )
**ADMINISTRATRIX OF THE**                       )
**ESTATE OF CLARA TUBBS-HILL**                  )
**5491 BEECHMONT AVENUE #102**                  )
**CINCINNATI, OH 45230**                        )
)
**AND**                                         )
)
**CONNIE UNDERWOOD**                            )
**135 MONTCLAIR STREET**                        )
**LUDLOW, KY 41016**                            )
)
**AND**                                         )
)
**BRITNEY HAVENS,**                             )
**ADMINISTRATOR OF THE ESTATE**                 )
**OF KIMBERLY UNDERWOOD**                       )
**1340 PARKWAY AVENUE**                         )
**COVINGTON, KY 41016**                         )
)
**AND**                                         )
)
**JACKLEN UPCHURCH**                            )
**4264 CIDER MILL**                             )
**CINCINNATI, OH 45245**                        )
)
**AND**                                         )
)
**JORDAN VANCE**                                )
**715 LITTLE HARTS CREEK ROAD**                 )
**HARTS, WEST VIRGINIA 25524**                  )
)
**AND**                                         )
)
**TRACEY WALSH**                                )
**4246 WEST ARM DRIVE**                         )
**SPRING PARK, MN 55384**                       )
)
**AND**                                         )
)
**MICHELLE WALTERS**                            )
**915 HIGHKNOLL COURT, #93**                    )
**VILLA HILLS, KY 41017**                       )

)
**AND** )
)
**HELEN WARD** )
**7902 CONSTITUTION DRIVE** )
**CINCINNATI, OH 45215** )
)
**AND** )
)
**PATSY ERVIN, EXECUTRIX OF** )
**THE ESTATE OF MICHAEL WATKINS**)
**1613 ASMANN AVE., #3** )
**CINCINNATI, OH 45229** )
)
**AND** )
)
**WILLIAM WOLDER,** )
**ADMINISTRATOR OF THE** )
**ESTATE OF ELAINE WAXLER** )
**9508 SOUTHGATE DRIVE** )
**CINCINNATI, OH  45241** )
)
**AND** )
)
**SHIRLEY WEBBER,** )
**ADMINISTRATOR OF THE ESTATE** )
**OF DANIEL WEBBER** )
**1205 LESLIE MARIE** )
**ELSMERE, KY 41018** )
)
**AND** )
)
**CHRISTINA CANFIELD** )
**ADMINISTRATRIX OF THE ESTATE** )
**OF REGINA WESLEY** )
**2303 VIVIAN PLACE** )
**COVINGTON, KY 41011** )
)
**AND** )
)
**TIMOTHY WHALEN** )
**22 WARSAW AVENUE** )
**DRY RIDGE, KY 41035** )
)
**AND** )
)

**CASEY WHALEN,** )
**ADMINISTRATOR OF THE ESTATE** )
**OF VIOLET WHALEN** )
**940 CURRY LANE** )
**DRY RIDGE, KY 41035** )
)
**AND** )
)
**LONNIE WHEELER** )
**406 MONTE DRIVE** )
**MASON, OH 45040** )
)
**AND** )
)
**JOEY WILDER,** )
**ADMINISTRATOR OF THE ESTATE** )
**OF TAMATHY WILDER** )
**234 LEWIS LANE** )
**NEWPORT, KY 41071** )
)
**AND** )
)
**TROY WILDER** )
**2947 RIDGE AVENUE** )
**HEBRON, KY 41048** )
)
**AND** )
)
**BENJAMIN WILLIAMS** )
**453 FOREST AVENUE** )
**ERLANGER, KY 41018** )
)
**AND** )
)
**KELLY WILLIAMS** )
**42 MEADOWCREST DRIVE** )
**FRANKLIN, OH 45005** )
)
**AND** )
)
**PATRICK WILLOUGHBY** )
**2138 AMSTERDAM ROAD** )
**COVINGTON, KY 41017** )
)
**AND** )
)

45

**CAROL WILSON** )
**920 BLACKSTONE STREET** )
**WASHINGTON COURT HOUSE,** )
**OH 43160** )
)
**AND** )
)
**NODRA WEST, ADMINISTRATOR OF** )
**THE ESTATE OF JETTON WILSON** )
**1356 WAYCROSS ROAD** )
**CINCINNATI, OH 45240** )
)
**AND** )
)
**PAUL WILSON** )
**534 FLEMING RD.** )
**CINCINNATI, OH 45231** )
)
**AND** )
)
**SABRINA OBER,** )
**ADMINISTRATRIX OF THE ESTATE** )
**OF PAULA WILSON** )
**5381 SOUTHGATE BLVD, #1** )
**FAIRFIELD, OH 45014** )
)
**AND** )
)
**ROBERT WILSON** )
**4184 PAXTONWOODS LANE, APT. 9** )
**CINCINNATI, OH 45209** )
)
**AND** )
)
**TERRY WILSON** )
**419 EVANS COURT** )
**BUILDING E, APARTMENT 4** )
**OWENSVILLE, OH 45160** )
)
**AND** )
)
**VICKY WILSON** )
**4026 BENNETT DRIVE** )
**FAIRFIELD, OH 45011** )
)
**AND** )

**DAWN WINGERT**
**28 EVANS CT.**
**HARRISON, OH 45030**

**AND**

**PRISCILLA WITTMEYER**
**3 FINCH COURT**
**AMELIA OH 45102**

**AND**

**WILLIAM WOLDER**
**9243 DEERCROSS PKWY. APT #1A**
**BLUE ASH, OH 45236**

**AND**

**CARLA WOOTEN**
**3981 THOMAS DRIVE**
**ERLANGER, KY 41018**

**AND**

**AMBER WORK**
**3834 KY. HWY. 330W**
**FALMOUTH, KY 41040**

**AND**

**DEBORAH WORLEY**
**22 SAGEBRUSH LANE**
**ERLANGER, KY 41018**

**AND**

**KENNETH WORLEY,**
**ADMINISTRATOR OF THE**
**ESTATE OF TERESA WORLEY**
**211 CHARISSA AVE.**
**HILLSBORO, OH 45133**

**AND**

**RON WRIGHT, EXECUTOR OF**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**THE ESTATE OF LEAH WRIGHT**    )
**2643 OXFORD MILLVILLE ROAD**    )
**OXFORD, OH 45056**    )
    )
**AND**    )
    )
**JOANN YOUNG**    )
**600 BRUSH ARBOR ROAD, APT 606**    )
**WILLIAMSBURG, KY 40769**    )
    )
**AND**    )
    )
**JUDY YOUNG**    )
**448 GREENWELL AVENUE**    )
**CINCINNATI OH 45238**    )
    )
**AND**    )
    )
**KEITH YOUNG**    )
**491 HARWOOD ROAD**    )
**MT. ORAB, OH 45154**    )
    )
**AND**    )
    )
**CORINNE ZACHRY**    )
**1934 GARDENA AVENUE**    )
**GLENDALE, CA 91204**    )
    )
**AND**    )
    )
**ZACHARY ZAERR**    )
**2228B 10th AVE EAST**    )
**SEATTLE, WA 98102**    )
    )
**AND**    )
    )
**HANNAH ZYMSLO**    )
**10047 MILFORD ROAD**    )
**FALMOUTH, KY 41040**    )
    )
         **PLAINTIFFS,**    )
    )
**v.**    )
    )
**THE MEDICAL PROTECTIVE**    )
**COMPANY INC.**    )

**5814 REED ROAD** )
**FORT WAYNE, IN 46835** )
)
**SERVE:** )
**CT Corporation System** )
**4400 Easton Commons Way** )
**Suite 125** )
**Columbus Ohio 43219** )
)
**and** )
)
**MEDPRO GROUP INC., f/k/a** )
**Medical Protective Corporation,** )
**5814 REED ROAD** )
**FORT WAYNE, IN 46835** )
)
**SERVE: CT Corporation System** )
**4400 Easton Commons Way** )
**Suite 125** )
**Columbus Ohio 43219** )
)
**and** )
)
**ROBERT IGNASIAK** )
**5814 REED ROAD** )
**FORT WAYNE, IN 46835** )
)
            **DEFENDANTS** )

---

## COMPLAINT

---

Plaintiffs set forth their *Complaint with Jury Demand Endorsed Hereon* against

defendants The Medical Protective Company, Inc.; MedPro Group Inc., f/k/a Medical Protective

Corporation; and Robert Ignasiak (collectively, the "Defendants"), and state and allege as

follows:

## **PARTIES**

1.      Plaintiffs all have claims against Dr. Durrani and CAST for medical malpractice. None of them have ever received an offer from Medical Protective. This group of Plaintiffs have not had their trials yet.

2.      Defendant The Medical Protective Company, Inc. is an Indiana corporation with its principal place of business located at Fort Wayne, Indiana, and at all relevant times was engaged in the business of insurance in Ohio and it insured professional medical liability risks in Ohio. At all pertinent times, defendant The Medical Protective Company, Inc. was registered with the Ohio Department of Insurance, and was authorized to do business in Ohio, and did do business in Ohio, by holding a Ohio Certificate of Authority.

3.      Defendant MedPro Group, Inc. is an Indiana corporation with its principal place of business located at Fort Wayne, Indiana, and at all relevant times was engaged in the business of insurance in Ohio and it insured professional medical liability risks in Ohio. At all pertinent times, defendant MedPro Group, Inc. was registered with the Ohio Secretary of State, and was authorized to do the business in Ohio, and did do business in Ohio, by holding a Ohio Certificate of Authority. This entity was originally known by and registered with the Ohio Secretary of State as Medical Protective Corporation, an Indiana corporation with its principal place of business located at Fort Wayne, Indiana. During September 2015, Medical Protective Corporation changed its name to MedPro Group, Inc. and registered the name change with the Ohio Secretary of State. Defendants The Medical Protective Company, Inc. and MedPro Group, Inc. shall hereinafter be referred to as "Medical Protective."

4.      At all relevant times, Medical Protective provided medical malpractice insurance coverage to Abubakar Atiq Durrani (**"Durrani" or Dr. Durrani"**) and his medical practice Center for Advances Spine Technologies, Inc. (**"CAST"**).

5.     Defendant Robert Ignasiak is an individual who is a citizen of the United States and of the State of Indiana.

## JURISDICTION AND VENUE

6.     There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy between Plaintiffs and each Defendant exceeds the sum of $75,000.00, exclusive of interest and costs.  Consequently, this Court has subject matter jurisdiction over each Plaintiff's claims and causes of action against each Defendant pursuant to the federal diversity of citizenship statute, 28 U.S.C. § 1332(a).

7.     This Court has *in personam* jurisdiction over defendant The Medical Protective Company, Inc., an Indiana corporation, because at all pertinent times, this defendant had registered with the Ohio Department of Insurance to do business in Ohio, had irrevocably appointed the Ohio Secretary of State to receive service of process as a condition for transacting business in Ohio, and had been issued a Certificate of Authority to do business in Ohio and, consequently, by complying with these statutory requirements, this defendant consented to be sued in Ohio courts.  Alternatively, this defendant is amenable to suit in this Court under the Ohio Long Arm Statute (the "LAS"), because, among other things, it: (i) transacted business in Ohio, (ii) contracted to supply services in Ohio, (iii) caused tortious injuries by an act or omission in Ohio, (iv) caused tortious injury in Ohio by acts or omissions outside Ohio where it regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered in Ohio, and (v) contracted to insure risks located within Ohio at the time of the contracting.  This Court's exercise of personal jurisdiction over this non-resident defendant does not offend its federal due process rights.

8.     This Court has *in personam* jurisdiction over defendant MedPro Group Inc., f/k/a Medical Protective Corporation, an Indiana corporation, because at all pertinent times this defendant

had registered to do business in Ohio, had appointed a registered agent located in Ohio to receive service of process as a condition for transacting business in Ohio, and had been issued a Certificate of Authority to do business in Ohio and, consequently, by complying with these statutory requirements, this defendant consented to be sued in Ohio courts. Alternatively, this defendant is amenable to suit in this Court under the LAS because, among other things, it: (i) transacted business in Ohio, (ii) contracted to supply services in Ohio, (iii) caused tortious injuries by an act or omission in Ohio, (iv) caused tortious injury in Ohio by acts or omissions outside Ohio where it regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered in Ohio, and (v) contracted to insure risks located within Ohio at the time of the contracting. This Court's exercise of personal jurisdiction over this non-resident defendant does not offend its federal due process rights.

9. This Court has *in personam* jurisdiction over defendant Robert Ignasiak because he is amenable to suit in this Court pursuant to the LAS arising from, among other things, his: (i) causing tortious injuries by an act or omission in Ohio, and (ii) causing tortious injury in Ohio by acts or omissions outside Ohio where he engaged in a persistent course of tortious conduct against Plaintiffs. This Court's exercise of personal jurisdiction over this non-resident defendant does not offend his federal due process rights.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391 because it is a District in which a substantial part of the events or omissions giving rise to the claim asserted herein occurred, Medical Protective consented to the Court's personal jurisdiction, and Defendants are subject to the Court's personal jurisdiction pursuant to the Ohio Long Arm Statute and other applicable law.

11.     At all pertinent times, Durrani was licensed to practice the profession of medicine in the State of Ohio, and did practice medicine in Ohio.

## PRELIMINARY OVERVIEW

12.     Defendants conduct, along with the conduct of their agents, involves unique and egregious behavior of the unprecedented kind relative to the handling of malpractice claims.

13.     Verdict amounts covered by Defendants insurance policy now exceeds thirty-eight million dollars, $38,000,000.

14.     Defendants have made no offer on any case.  Defendants still make no offer, even on claims where a verdict against them have been returned.  Further, Medical Protective has made statements on the record that "we will never settle."

15.     Defendants claim that their denials are based on an algorithm.  The "algorithm" has apparently not changed from trial one to trial eighty-three.

16.     Defendants intend to deny claims until all claimants are dead. Their agents use every delay tactic known to law. Already, over 87 claimants have died.

17.     However, these claims involve more than just not settling.  Upon information and belief and as pled, Defendants aided, abetted, and encouraged the criminal, Durrani, to flee the United States. They did this with the intent to deny coverage based on non-cooperation.

18.     Defendants have attempted every possible tactic including the deception over five (5) years regarding Dr. Durrani's unwillingness to give a deposition.

19.     For over a year now, the lawyers claiming to represent Dr. Durrani at trial have no contact with him.  Yet, they claim he, not Medical Protective, is their client.

20.     Defendants knew there was no reasonable basis to deny Plaintiffs claim and/or Defendant acted with reckless disregard for whether a basis for denial existed.

21.     In addition, Defendants' actions blocked the resolution by settlement of Plaintiffs claims.  However, Defendants' wrongful conduct goes far past simply not making offers on undeniably valid claims.  This is further proof of their malicious bad faith. It includes attempts to avoid coverage through nefarious means, manipulating and/or encouraging and/or advising Durrani into leaving and after he was in Pakistan, fraudulently not producing Durrani for deposition and making decisions without communicating with him.

22.     In Medical Protective's Claim File for a prior case *Rita Hounchell*, Medical Protective acknowledges that Durrani agreed to give testimony in 10 cases on top of the two depositions.  Medical Protective lost those trials.  Miraculously, Durrani stopped giving depositions and testimony.  Durrani was told not to testify or not told of the depositions and trials at all.

23.     Despite Durrani's continued willingness to testify via Skype, Medical Protective continues their sad charade claiming, "once again we face the reality of Dr. Durrani's refusal to participate in this case as a witness, wither live or by video conferencing."

24.     There are references to experts in Claims Files Medical Protective had reviewed. They either never call or admit they can't defend the case.  Still, Medical Protective will not settle the cases.  Medical Protective instead tries to hide the negative reports, hiding behind privilege logs.

25.     Lindhorst references Alan Statman as inexperienced in medical malpractice or average ability. Despite Alan Statman's alleged inexperience in medical malpractice or average ability, he continues to win the record-breaking victories in prior Durrani cases.  Instead of acknowledging either the extreme talent of the Deters Law Team or the absolute weakness of their cases, Medical Protective's claims files are filled with sarcasm directed towards Eric

Deters, Alan Statman, and Glenn Feagan- all crucial members of a team that has racked up $100 million dollars in verdicts against Medical Protective. Medical Protective refuses to offer or counteroffer on any Durrani case and views the massive verdicts and suffering of Durrani's victims as a joke.

26.     In Medical Protective's File on *Hounchell*, they derisively refer to Glenn Feagan as the "new owner" of Deters Law.

27.     Medical Protective provides no correspondence in their claims file after verdicts, showing that they are unwilling to offer to settle cases even as they are on their way to appeal or adjust their strategy of "no deals."

28.     Medical Protective views Judge Reece as "plaintiff oriented."  Still, Medical Protective refuses to make any offers in individual cases.

29.     The delay in the resolution of this case has caused egregious harm to Plaintiffs.  In addition, Plaintiffs have incurred unnecessary legal fees protecting and advancing their interests. The Durrani Plaintiffs have suffered emotionally, physically and financially.  Fifty-nine (59) Plaintiffs have already died before being allowed their day in court.  Over 50 additional Plaintiffs have had to file bankruptcy awaiting their trials and not being offered any compensation by Defendants for their obviously meritorious claims against their insureds, Durrani and CAST.

30.     The Deters Law Firm represents over 500 clients in cases for medical malpractice actions against Durrani and the hospitals where he either worked or had surgical privileges. Approximately 497 all of these clients, including Plaintiffs, have cases covered by Medical Protective's policies of insurance for Durrani and CAST.

31.     Among these original Hospitals are West Chester Hospital (owned by UC Health), Cincinnati Children's Hospital Medical Center, Journey Lite of Cincinnati, Good

Samaritan Hospital, Christ Hospital, Deaconess Hospital and Riverview Hospital.  Several have settled for confidential amounts, but those settlement support these claims by painting a contrast on how hospitals with less direct culpability have handled the claims versus the primary culprit, Dr. Durrani and Medical Protective.

32.     Medical Protective knew at the outset of massive litigation in 2012/2013, and prior to Plaintiff's trial, that Durrani breached the standard of care and committed negligent acts, criminal acts, and fraudulent acts involving unnecessary spine surgeries which would require Medical Protective to defend Durrani and provide coverage for the negligent acts.

33.     Medical Protective was fully aware that Durrani was terminated from Cincinnati Children's Hospital in 2008 after his colleagues produced undeniable evidence that he engaged in shoddy and botched surgeries, unauthorized experimental surgeries, and fraudulent surgeries. Medical Protective was also aware that his colleagues drafted a letter to the Ohio Medical Board describing Durrani's frauds and erratic behavior and warned that he is a clear and present danger to patients.

34.     As noted above, Durrani and CAST operated two Kentucky locations and their patients visited, called, received information from, billed from, marketed from and treated and interacted with them at those two locations and the Ohio locations.

35.     In 2013, prior to Plaintiffs trial, Medical Protective knew Durrani had been arrested and indicted on over 30 federal charges related to unnecessary spine surgeries and prescription fraud and then fled from the United States to Pakistan to avoid a federal criminal trial and civil litigation.

36.     Defendants actually chose a bad faith and unfair claims scorched earth defense to rally around a doctor who faced all of this adversity -- Durrani.  It defies logic.  It is probably bad faith and unfair claims practices per se if a *per se* claim exists.

37.     On information and belief, Medical Protective, Defendants, including their legal counsel, encouraged and/or participated in Durrani's flight to Pakistan.

38.     Medical Protective then attempted to use Durrani's flight to void coverage under their policies of medical malpractice insurance under the so-called non-cooperation clause found within each policy and cheat Plaintiffs and other Durrani victims from Medical Protective's coverage.

39.     Following his flight to Pakistan, Medical Protective obstructed Plaintiffs counsels' efforts to depose Durrani for over five years of pending civil litigation, claiming Durrani did not want to give depositions when Medical Protective knew that he actually wanted to be deposed in cooperation of coverage.  This too was used with intent by Medical Protective to void coverage and thwart litigation against Durrani in flagrant violation of KRS §304.12-230 ("Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue").  Defendants claimed they could not contact him and/or he refused a deposition, when, in fact, Defendants never even asked him about being deposed.

40.     Medical Protective and their agents including Lindhorst actually use the phrase referencing Durrani: "before he allegedly left the country."

41.     Medical Protective send Durrani the same bogus form letter clearly attempting to "set up" the lack of cooperation.

42.     Lindhorst and Reminger put in reports that Durrani's "lack of cooperation" is why they MIGHT lose.  Still, they make no offer or counteroffers.

43.     Medical Protective Claims Files reference a letter from Durrani to Attorney Lyon in January 2019 "stating no longer to participate in defense."  Medical Protective has not produced that letter.  Medical Protective also reference our proposal to Durrani and claim it should be referred to his criminal defense lawyer Ed Perry.

44.     Despite knowledge of the magnitude of their liability and exposure from 2013 to the present (including multiple million-dollar verdicts against Durrani), there has never been a single rational good faith proposal of resolution by Medical Protective to resolve what is referred to as the Durrani litigation which includes all the Plaintiffs.

45.     If the facts in this matter do not support a claim against Medical Protective, no set of facts will.

### ELABORATION UPON PERSONS INVOLVED IN PLAINTIFFS CLAIM

46.  Medical Protective issued a policy of medical malpractice liability insurance to  Durrani, effective January 1, 2009, to January 1, 2010, which was thereafter renewed on an annual basis through December 31, 2013, with the policies in effect from January 1, 2009, to December 31, 2010, having limits of $1,000,000 "one occurrence" and $3,000,000 in the aggregate, and policies in effect from January 1, 2011, to December 31, 2013, having limits of $5,000,000 "one occurrence" and $7,000,000 in the aggregate.

47.  Medical Protective issued a policy of medical malpractice liability insurance to CAST, effective January 1, 2009, to January 1, 2010, which was thereafter renewed on an annual basis through December 31, 2013, having limits of $1,000,000 "one occurrence" and $3,000,000 in the aggregate.

48.  The aggregate amount of the coverages under Medical Protective's policies of liability insurance issued to Durrani and CAST is approximately $42,000,000.00.

49. Defendant Robert Ignasiak is Senior Vice President, General Counsel and Claims Leader for defendants The Medical Protective Company Inc. and Med Pro Group, Inc. From 2012 through now, he has had direct decision authority on all of Plaintiffs' claims.

50. Durrani was licensed to practice medicine in Ohio and an orthopedic spine surgeon who, at all times relevant, was insured against claims for medical malpractice liability by Medical Protective. Durrani maintained a professional office at in Ohio, located at 4555 Lake Forest Drive, Suite 150, Cincinnati, OH 45202.

51. Durrani was arrested by FBI agents on July 25, 2013 based on a federal criminal complaint filed in the U.S. District Court, S. Ohio (Cincinnati). He was indicted by the U.S. Department of Justice on August 7, 2013 for healthcare fraud (fraudulent surgeries). While this case was nearing its trial date on January 6, 2014, Durrani, a Pakistani national, who had been miraculously given a bond, fled the United States in November/December 2013. He remains in Pakistan to this day. Defendants were complicit in his flight. Durrani's Ohio medical license was permanently revoked on March 12, 2014. His Kentucky medical license was permanently revoked on April 22, 2014.

52. CAST was an Ohio corporation and Durrani's professional practice group. At all times relevant, CAST was insured against claims for medical malpractice liability by the Medical Protective. CAST had a professional office at 4555 Lake Forest Drive, Suite 150, Cincinnati, Ohio. CAST also had offices at several Ohio locations.

53. The Medical Protective Defendants do a high volume of medical malpractice insurance business in Ohio. They insure the medical malpractice risks of many physicians and other medical professionals in Ohio.

54. At all times relevant, Michael F. Lyon was and is at all relevant times including from 2012 through now, an attorney, and a partner, an owner and an employee of the law firm of Lindhorst & Dreidame Co., LPA.  He is also an agent of the Medical Protective Defendants.  Lyon and Lindhorst & Dreidame have billed and received fees from Medical Protective in the millions of dollars in the defense of Durrani and CAST from Plaintiffs and other Durrani lawsuits.  He has been involved in the litigation and trial of all the cases.

55. James Brockman is an attorney, Michael Lyon's partner, and has been "second in command" in the defense of Durrani and CAST.  He has been involved in the litigation and trial of nearly all, if not all, of the Durrani Plaintiffs' cases tried to date.  He is also an agent of the Medical Protective Defendants.

56. Paul Vollman is an attorney, employed at Lindhorst & Dreidame, and is "third in command" in the defense of Durrani and CAST.  He has been trying the cases of late.  He has been involved the last several years.  He is also an agent of the Medical Protective Defendants.

57. Rick Weil is an attorney, employed at Reminger Co. LPA, and has been trying Durrani cases.

58. Michael Mahon is an attorney, formerly employed at Reminger Co. LPA, and has also been trying Durrani cases.

59. Lyon, Brockman, Vollman, Weil and Mahon and their law firm are in fact agents of Medical Protective and all five of these lawyers participated in the unfair claims' practices on behalf of Medical Protective.  In addition, all of them have admitted on the

record they have no contact with Dr. Durrani, yet claim he is their client they are

representing at trial.

60. Now, John Haviland of Bieser, Greer and Landis in Dayton, Ohio is representing Dr.

Durrani in several cases and refuses to disclose whether he's had any contact with Dr.

Durrani.

61. At all times relevant, Richard Marcello is the Division Claim Manager of Mideast

Division of Medical Protective located in Louisville, Kentucky and in this position is

over Defendants' claims in Ohio, Indiana and Kentucky, including all Plaintiffs claims.

He has held this position since September 2013, the time frame of the issues brought in

this lawsuit. Prior to this, he served from 2002 through September 2013 as a Medical

Malpractice Claim Specialist at Medical Protective and St. Paul Companies from 1986 to

2002. He is a supposed expert on medical claims against doctors. From 2013 through

now, he had direct decision authority on all Plaintiffs claims.

62. At all times relevant, Mackenzie Walter is an employee of Medical Protective, who

works out of Louisville, Kentucky under the supervision of Richard Marcello. She has

monitored from the courtroom and through communication with the other Medical

Protective employees and agents, the trials and litigation against Durrani, including all

Plaintiffs claims, including direct emails in Medical Protective's Claim file on Rita

Hounchell.

63. Attorney Steven Janik was and is at all times referenced in this Complaint an attorney, a

partner, an owner and an employee of the law firm Janik, LLP. Janik and his law firm are

in fact agents of Medical Protective and participated in the unfair claims practices on

behalf of Medical Protective.

64. Rick Marcello and MacKenzie Walter are involved in every file out of Louisville, Kentucky where Kentucky has Unfair Claims Practices statute.

65. Plaintiffs have standing to assert their claims being filed here.

66. Plaintiffs' facts and claims will defeat any Motion under Fed. R. Civ. P 12(b)(6) for these allegations in this Complaint are not only true, they must be accepted as true under 12(b)(6).

67. The claims filed here are supported by documentation and testimony regarding representations and communication to and from Durrani and Michael Lyon and Medical Protective already known even before discovery. The evidence is significant even before any written discovery, review of the claims file and a single deposition is taken.

## DR. DURRANI'S ARREST, INDICTMENT AND FLIGHT: THE CONSPIRACY BEGINS

68. On February 23, 2013, just after Plaintiff's trial with its million-dollar verdict, Deters Law, having six active Durrani cases, filed seven more cases bringing the number of its Durrani cases to thirteen. There was media coverage. After February 23, 2013, when three television stations covered the filing of these seven new lawsuits, Deters Law soon had over 150 cases. After publicity over Durrani's arrest, the case number soared to over 500. Deters Law then spent the money and time to have all the cases reviewed by a board certified orthopedic spine expert and file and litigate all the cases. Each case being an independent case meant this task was monumental. It was completed. To this day, each case has its own banker box or boxes complete with all their records and radiology. It is also all saved on a computer hard drive. Written discovery has taken place. A massive number of depositions have taken place.

69. On July 22, 2013, a Federal Criminal Complaint was filed against Durrani for false statements regarding to healthcare matters and fraud. Deters Law and their clients cooperated with the U.S. Attorney's office. Thirteen Deters Law clients testified before the federal grand jury.

70. On July 25, 2013, Durrani was arrested. At his first appearance in Court that day, the Court ordered Durrani to notify ALL his clients of his criminal charges. His arrest received massive media coverage. By Order of the presiding federal judge, Durrani had to post in his office and send to his patients a letter to warn them of the criminal charges.

71. As a result of Durrani's arrest on August 5, 2013, Michael Lyon canceled Durrani's previously scheduled August 10, 2013 deposition set for a civil case.

72. On August 7, 2013, Durrani was indicted on five counts of 18 U.S.C. §1035, entitled *False Statement related to Health Care Matters*, and five counts of 18 U.S.C. §1347, entitled *Health Care Fraud*. The court caption and case style of this criminal case in the United States District Court, Southern District of Ohio, is *United States v. Durrani*, Case No. 1:13-CR-84 (the "Criminal Case").

73. On August 19, 2013, Deters Law wrote to Michael Lyon asking whether the depositions of Durrani scheduled for August 22, 2013, and August 29, 2013, would take place. The depositions were canceled by Mr. Lyon.

74. On August 22, 2013, Durrani in a letter to patients, as ordered, announced the criminal charges against him.

75. On August 28, 2013, Glenn Whitaker, Durrani's criminal attorney, in a federal pleading on Durrani's behalf titled Motion to Modify Conditions of Release stated: **"Durrani is not a flight risk…"** Durrani also offered up his wife's and children's passport in an

attempt to convince the Court he would never abandon them. Of course, Durrani would

flee and abandon his wife and children. This is another example of the countless frauds

Durrani has committed. A fraud upon the presiding U.S. federal judge, Hon. Michael R.

Barrett.

76. On October 16, 2013, Durrani was then indicted the by grand jury with a Superseding

Indictment in the Criminal Case as follows:

- nine counts of 18 U.S.C. Sections 1347 and 2 ("Health Care Fraud")
- nine counts of 18 U.S.C. Section 1035
- three counts of 18 U.S.C. Sections 1347 and 2
- one count of 18 U.S.C. Section 1035 (a)(1)
- one count 18 U.S.C. Sections 1341 and 2 (Frauds and Swindles)
- one count 18 U.S.C. Section 1035 (a)(2)
- eleven counts 21 U.S.C. Section 841 (a)(1) ("unlawful distribution of a controlled substance") and 841(b)(1)(C)("Penalty subsection.")

77. On November 6, 2013, Medical Protective advised Durrani of the upcoming jury trial of

*Pierce v. Durrani, et al.* set to start January 6, 2014. Durrani had signed a NO

CONSENT form with Medical Protective blocking any settlement of any case. So not

only did he flee, he was defiant. Medical Protective would later receive federal court

approval to settle Durrani cases without his consent. Of course, settlements have never

happened.

78. On November 25, 2013, there was a scheduled Final Pretrial for Durrani's federal

criminal trial. A speedy trial was waived by Durrani. A new trial date was set for August

14, 2014. Durrani would later lie under oath at a 2018 deposition that he wanted a

speedy trial.

79. On December 6, 2013, according to Shazia Durrani's divorce papers, Durrani fled to

Pakistan where he is a citizen. His parents and siblings live there. Durrani had traveled

to and from Pakistan multiple times a year prior to his arrest.  While there is an extradition treaty between Pakistan and the United States, Pakistan has not complied with it since Osama Bin Laden was killed there by U.S. Special Forces.

80. On a Saturday morning in early December 2013, Michael Lyon called Eric Deters of Deters Law to inform Deters that Durrani had fled to Pakistan. **The first fact Michael Lyon stated to Eric Deters after the flight news was Lyon's misrepresentation there would be no coverage now from Medical Protective.**  He stated it in a most passive aggressive manner.  It struck a chord with Eric Deters.  Michael Lyon stated he would call later in the day for more details.  At the scheduled call, Eric Deters, realizing $42 million for his clients was at stake, scheduled a Court reporter to be with him without informing Michael Lyon.  This would be the only call with an attorney Eric Deters would ever record in his career and he did so knowing that with Ohio as a one-party state, without any lawyer exception, that it was lawful.  It would prove to be a wise move.

81. In a transcribed phone conversation between Eric Deters and Michael Lyon later that day, Michael Lyon stated: "And you know—so he—you know, they're well aware that they have to cooperate, have to participate, have to be in trial—now I just had a trial in Lima, Ohio; the one I told you about.  I told—he was in Hawaii.  **Now, I told him not to come. I didn't want him there because he was a weird and goofy guy, and I just took a risk and I didn't have him come.**  Now, if he had said, look, I'm not coming, screw you, well, they would have been in a position to say, fine, we'll defend you, but we're not going to cover you."  (Emphasis added).  Michael Lyon, unsuspecting, bragged to Eric Deters how he had successfully played this game before.  Lyon, as Medical Protective's

agent, acting with Medical Protective's knowledge and approval had found a way to "weaponize" the cooperation clause in bad faith.

82. On December 19, 2013, Durrani emailed a former patient of his while he was in Pakistan. This reflected how Durrani maintained contact with persons located in the United States and was accessible to even a former patient.

83. On December 19, 2013, Marvin Benson, Sr. Claim Specialist for Medical Protective, in an email to Durrani referenced a letter he needed a reply to regarding the upcoming trial of *Pierce* scheduled January 6, 2014.

84. On December 19, 2013, Marvin Benson, Sr. Claim Specialist for Medical Protective, sent Durrani a letter in the *Pierce* case, copied it to Michael Lyon and David Bendel, VP/Regional Manager of Medical Protective and states: "It has come to Medical Protective's attention that you will not be in attendance at this trial as you are no longer in the United States and have returned to Pakistan." How did that come to his attention? Michael Lyon. The fact this letter was copied to Michael Lyon will reveal itself as critical.

85. On December 23, 2013, there was an email from Durrani to Marvin Benson: **"Mr. Benson. Thank you for the letter. At this time, I will not be able to return back to the U.S. and unfortunately will not be able to assist in any way in defense of these civil cases. I regret the inconvenience caused in this regard. AD."** (Emphasis added). This email is very legalese. Civil cases? Of note, it's not copied to Michael Lyon like Marvin Benson's December 19, 2013 letter. Plaintiffs assert and allege Michael Lyon wrote this for Durrani and purposefully did not copy himself. This is one

of the many subject matters at his depositions in 2018, Michael Lyon actually wrongfully instructed Durrani not to answer solely to protect himself.

86. On January 2, 2014, Medical Protective's legal counsel, Steven Janik, filed a Complaint for Declaratory Judgment in the United States District Court, Southern District of Ohio, styled *The Medical Protective Company v. Durrani*, Case No. 1:14-cv-00005. In that lawsuit, Janik states: "Medical Protective retained the law firm of Lindhorst and Dreidame, LPA to defend Durrani and CAST in the Underlying Lawsuits." "By email of December 23, 2013 to Medical Protective, Durrani advised, **I will not be able to return back to the US and unfortunately will not be able to assist in any way in defense of these civil cases." "Durrani and CAST have failed to cooperate with Medical Protective and assist in the preparation and trial of the Underlying Lawsuits."** (Emphasis added). The significance? Medical Protective is representing in federal court, that Durrani is NOT assisting in his defense. This would later to be proven a scam by all the Defendants.

87. Medical Protective admit Durrani gave 14 hours of depositions in 2018 for ALL cases

88. All of these antics were designed to be a fraud upon Plaintiff regarding Defendants' coverage of her claim.

89. January 3, 2014, was the original scheduled federal trial date in the Criminal Case. An Overview of Federal Criminal Cases: Fiscal Year 2012," a report produced by the United States Sentencing Commission's Office of Research and Data, shows that in 2012, there were 84,360 federal criminal cases in which the defendant was sentenced. Of those convicted defendants, 97% pleaded guilty, with fraud being the third largest category of criminal cases during 2012 at 10.5%. The rate of conviction overall remained at over

67

90%, as it has since 2001.  Underlying Plaintiffs ask the Court to take judicial notice of this fact.  This fact is the primary underlying basis for this Motion.  Based on the above referenced statistics, had  Durrani remained in the United States and not fled to Pakistan, there is a 97% probability that he would have been convicted of, or pleaded guilty to, the criminal charges pending against him.  **Once convicted of a felony, if Durrani were present at any of the state civil actions against him, he would have had to admit that he was a convicted felon.  This fact alone proves Medical Protective benefitted from Durrani's flight, was not prejudiced.  The flight avoided a certain conviction.**

90. On January 6, 2014, the *Pierce* trial was scheduled to begin.  This would be the first Durrani trial of Deters Law clients.  Michael Lyon called Durrani by previously taken discovery deposition.  Durrani did not attend the trial.  As noted earlier the jury returned a verdict of $1.04 million dollars.  Eric Deters tried the case for Deters Law.

91. Defendants then engaged in a lengthy appeal process. The Ohio 1st District Court of Appeals affirmed the judgment on July 15, 2015. Although liability was firmly established with competent evidence, and even knowing Durrani's abominable past actions, the Defendants appealed to the Ohio Supreme Court to delay payment. Jurisdiction was denied by that court on February 9, 2016. All settlement demands were denied with Defendants' full knowledge that there was no reasonable basis to deny the claim and/or reckless disregard for whether a basis existed.

92. From 2014 to 2018, Plaintiffs were unable to ask Durrani questions on countless relevant topics.  The proposed questions cover his background, liability, causation, damages, credibility, his privileges at hospitals and more.  Plaintiffs were only able to depose Durrani in six cases before he fled.  After his arrest, informants gave Deters Law volumes

of information they never knew, and Deters law obtained the Kentucky and Ohio Medical

Board files. Plaintiffs were again not able to depose Durrani with the benefit of this

newly obtained information. At trials, Durrani's legal counsel was able to conduct voir

dire, give an opening, cross examine witnesses, call witnesses, make motions and give a

closing. Plaintiffs had to do the same without Durrani's deposition or testimony. This

lengthy pattern of bad faith corroborates Plaintiff's allegations.

93. Just after Plaintiff's trial, on January 17, 2014, Glenn Whitaker filed a *Motion to

Withdraw as Counsel for Durrani* in the Criminal Case and stated: **"As the defendant

fled the United States… communication between Vorys and the defendant has

ceased,** and the defendant has failed to fulfill financial obligations to Vorys for its

services." Of note, while Durrani is not communicating with his criminal defense lawyer,

Michael Lyon claims he is communicating with Durrani in Pakistan during this time.

94. Plaintiffs are entitled to Defendants' entire claims file. In 2013, it was requested by

Deters Law to be preserved for production.

**THE DEFENDANTS' DURRANI DEPOSITION SCAM AND ATTEMPT TO VOID
COVERAGE AND OBSTRUCT THE CIVIL LITIGATION**

95. On January 22, 2014, Eric Deters requested a telephonic video deposition of Durrani in

the *Cory Wright* case and all cases scheduled for trial. He took the extraordinary step to

set the deposition up from LaHore, Pakistan at Doctors Hospital where Durrani was

employed as its chief of spine surgery.

96. On February 3, 2014, there is a letter from Paul McCartney, one of Durrani's lawyers, not

being paid by Medical Protective, to Eric Deters regarding Durrani's deposition in

*Wright*: **"This is in response to your letter of January 22, 2014 requesting the

deposition of Durrani. Dr. Durrani has indicated that he is unable to give a

69

**deposition at the present time in this case or in any other case." Durrani's legal counsel made it clear. There will be no depositions. Who benefited? Durrani, the hospitals and Medical Protective and the other Defendants.**

97. On February 5, 2014, Deters Law asked Paul McCartney for proof that Durrani responded with a refusal to participate in the deposition. Paul McCartney never responded.

98. On February 17, 2014, Durrani gave medical treatment direction to the same patient he emailed in December 19, 2013. This patient became a client of the Deters Law Firm. This reflects how Durrani was engaged from Pakistan with even a former patient.

99. On February 25, 2014, Durrani's Legal Counsel stated: **"As opposing counsel and the Court are aware, Durrani has allegedly fled the country. Recent efforts to communicate with him have been fruitless."** The "alleged flight" of course is a lie because Michael Lyon told Eric Deters that Durrani fled and the U.S. Attorney's office confirmed it. In a response to a Motion to Compel, Michael Lyon claims: **"Dr. Durrani's attorneys, as officers of the Court, assured that they have properly communicated with their client."** Plaintiffs do NOT believe this. **Medical Protective and Michael Lyon successfully navigated a win for Medical Protective. They knew if Durrani gave depositions Medical Protective would have to provide coverage. They also know he was a terrible witness who would be destroyed at his deposition based upon all which had been revealed after his arrest.**

100.     On February 28, 2014, Durrani's legal counsel answered discovery in the *Shell* case with this statement: **"As opposing counsel and the Court are aware, Durrani has**

**allegedly fled the country.  Recent efforts to communicate with him have been fruitless."**

101.     On May 7, 2014, Plaintiffs requested Durrani's counsel to advise Deters Law whether or not they informed Durrani of the notice to depose him in *Romer* and *Feltner*. Paul McCartney replied: **"You are not entitled to know how or if we have communicated to Dr. Durrani about the notices."**  Not only is Paul McCartney's statement legally wrong, it was clear his response is to protect him, not Durrani.  Paul McCartney cannot reveal what was communicated to his client, not how or if.

102.     On May 13, 2014, Deters Law acknowledged a dispute regarding Durrani's discovery answers.

103.     On May 13, 2014, Deters Law asked if Durrani will appear at his deposition. Michael Lyon responded by letter: **"As requested, we have notified Dr. Durrani at his deposition that you recently noticed.  As of May 13, 2014, we have not received any word from Durrani regarding the deposition."**

104.     On May 21, 2014, there was an email from Jim Brockman, Michael Lyon's partner, to Deters Law: **"I know I had not had any reply from Dr. Durrani regarding the deposition.  I have now heard from Messrs. Lyon and McCartney.  They haven't either.  If we do hear something from him, we'll be sure to advise you as soon as we can."**

105.     On May 21, 2014, plaintiffs cancelled the depositions of Durrani based upon the representations above.

106.     On May 28, 2014, the Deters Firm noticed Durrani for 99 depositions.

107.      On May 30, 2014, Michael Lyon wrote the Deters Law responding to 99 cases

Durrani is noticed for deposition.  They state: **"We have advised Durrani of this."  "He**

**advises he will not be available."**  He also stated: "In light of this advice, as was the

case in the previously noticed deposition, we shall not insist that you go through the

formality of arranging for a court reporter in Pakistan, having the reporter be there and

you, personally attend the deposition to prove he is unavailable."  The significance?  **It**

**contradicts previous statements that attempt to communicate with Durrani have**

**been fruitless.  Durrani's lawyers always alternated between claiming**

**communication with him and not, to suit Medical Protective's needs.  During all his**

**time in Pakistan, Durrani has worked at Doctors Hospital, had a cell phone, home**

**phone, work phone and email.  He's never been unreachable.**

108.      On June 3, 2014, the discovery answers state: "… since Dr. Durrani has,

apparently, fled the country."  They still claim "apparently."

109.      On June 6, 2014, Durrani was scheduled for depositions from Pakistan in 99

cases.  These depositions too would not happen.

110.      On August 18, 2014, Durrani's federal criminal trial comes and goes while

Durrani is in Pakistan.

111.      On November 25, 2014, there was an email from Paul McCartney to Deters Law

Firm**: "Dr. Durrani will not be appearing on Wednesday, November 26th for his**

**deposition in the cases for which you sent notices.  As before, it is not necessary for**

**anyone from Plaintiff's to make a record.  Please let me know if you have any**

**questions.  Paul"**  Again, his lawyer informed Deters Law to not waste time.  And note

the word choice of Paul McCartney: "will not be appearing."  Why?  **Because he never**

**even told him about the deposition. He did not want to lie and chose his words carefully.**

112.     The November 26, 2014, the scheduled deposition of Durrani never took place based upon Paul McCartney's representation.

113.     It must be stressed why Deters Law kept trying to take Durrani's deposition. To receive a sanction under CR 37, a deposition must be noticed and attempted. **One of the greatest injustices to Plaintiffs is that despite all which is being laid out here, only Judge Ruehlman and Judge Barrett were willing to sanction Durrani in a serious manner.**

114.     On August 31, 2015, Steven Janik, Medical Protective counsel, filed a Motion to Consent to Settle Cases. In that pleading, Steven Janik wrote: "By leaving the country and stating that he will not return or otherwise assist in the defense of the civil cases pending against him, **Durrani has breached his duty to cooperate**, which is a material condition of the Policies, and as a result Durrani has forfeited his rights under the Policies. *See Luntz,* 135 Ohio St. at 232; 20 N.E.2d at 244." **"Durrani intentionally left the country in response to his indictment in the Criminal Litigation, and has expressly refused to participate in his defense.** This voluntary and intentional conduct warrants the conclusion that Durrani has relinquished all rights under the Policies, including the right to consent to settle." **"Durrani has expressly stated that he will not return or otherwise assist in the defense of the civil cases pending against him."** "As Durrani has fled the country and refused to cooperate with Medical Protective in the preparation of his defense and trial." The significance? **Medical Protective is representing in federal court, Durrani is NOT assisting in his defense.** By 2018, this

would all change and Deters Law would learn of the scam to prevent Durrani's cooperation by Defendants.

115.     Medical Protective and their agents including Lindhorst actually uses the phrase referencing Durrani: "before he allegedly left the country," despite their active assistance in his flight from justice.

116.     On January 29, 2016, Medical Protective proposed as a stipulated fact in a federal filing: **"Since Durrani's email of December 23, 2013, Durrani has, in fact, not cooperated with Medical Protective with respect to the Underlying Litigation and has neither attended nor assisted in preparation and trial of the Underlying Litigation."** Defendants intentionally refrained from asking him to attend or assist.

117.     On February 5, 2016, Steven Janik, Medical Protective counsel, filed in a pleading in federal court: **"Since Durrani's email of December 23, 2013, Durrani has not cooperated with Medical Protective with respect to the Underlying Litigation and has neither attended nor assisted in preparation and trial of the Underlying Litigation."** Defendants intentionally never asked him to.

118.     On July 25, 2016, West Chester/UC Health in a federal filing, Motion for Appointment of Receiver, asserts CAST and Durrani have failed **"to cooperate in the defense of more than 400 underlying civil cases against Durrani." Defendants intentionally never asked him to.**

119.     On July 25, 2016, Medical Protective in a pleading seeking a receiver in Case No. 1:14-cv-00005 stated: **"Since that time neither Durrani nor CAST have participated in the defense of the Underlying Cases." Defendants intentionally never asked him to.**

74

120.    All of the above paragraphs are a serious misrepresentation.   Durrani's legal counsel even maintained Durrani had assisted in his defense by reviewing discovery.

121.    On October 21, 2016, there was an Order by federal district court Judge Timothy S. Black in favor of Plaintiffs on the Medical Protective action 1:14-cv-00005 attempting to void coverage.  The crux of the decision is that Medical Protective was not prejudiced at all by Durrani's absence and "so called" lack of cooperation.  Assisted by their tactic of having Durrani flee, Defendants actually won in Butler County the next four trials after *Pierce* which will be explained more later.

122.    On October 27, 2016, Deters Law made another demand to Medical Protective based upon the Judge Black decision.

123.    On October 28, 2016, George Jonson, Michael Lyon's lawyer, laid out the effect of Judge Black's Order to Deters Law: "In light of Judge Black's decision, each of your clients are required to try their case, secure a verdict and demand payment at which time Medical Protective must refuse to pay and then you will be required to institute suit against Medical Protective and litigate the prejudice that Durrani's absence caused the defense, if any."  He was right at the time.  Another burden to Plaintiffs.  However, this issue would resolve itself in 2018 detailed later herein.

124.    On November 8, 2016, Deters Law demanded $42 million of Medical Protective.  **There was no response.**

125.    On November 21, 2016, Deters Law made another demand.  **There was no response**.

126.    On December 29, 2016, Deters Law made another demand on Medical Protective.  **There was no response.**

127.     On January 9, 2017, Deters Law made another demand to Medical Protective. **There was no response.**

128.     On January 16, 2017, Deters Law made another demand to Medical Protective. **There was no response.**

129.     On January 18, 2017, Deters Law questioned the game Medical Protective was playing with coverage, cooperation and depositions.

130.     On January 18, 2017, Deters Law asked attorneys Michael Lyon and Paul McCartney the following: **"Before we file something on the issue, we are giving you an opportunity to explain something. We ask for a response by 5:00 pm on Friday, January 20, 2017. It's not a difficult question. Are you communicating with Durrani and receiving his assistance and input on what you prepare and file as pleadings; answering discovery; and on all decisions that are made on a daily basis? We are not asking for the substance, just whether you are or not. If you are or are not, we simply want to know. If you are, we want to schedule his deposition. If you are not, please explain to us how you can ethically represent Durrani and file pleadings, conduct discovery, answer pleadings, assert defenses, file motions, make decisions etc. on his behalf when he is your client, NOT Medical Protective or River City Insurance. We are asking you for the legal and ethical authority you are doing so. Again, by 5:00 pm Friday, January 20, 2017 we are asking for a response. If you ignore this request, we will take the action based upon the answer being either/or for both."** No response would ever come.

131.     On January 23, 2017, Deters Law questioned attorney Thomas Glassman, Paul McCartney's co-counsel, about Durrani's deposition.

132.     On January 23, 2017, Paul McCartney responded by letter and ignored the simple

request that, if answered, caused no ethical issue:  are he and Michael Lyon receiving

communications and input from Durrani?

133.     On February 8, 2017, Deters Law sent another demand to Medical Protective.

There was no response.

134.     On March 16, 2017, Deters Law questioned the communication of Durrani's

lawyers with Durrani.

135.     On March 21, 2017, Michael Lyon by letter stated to Deters Law: **"I have

consulted with my client and as a result thereof, I am authorized to inform you that

he will not attend the deposition or depositions noticed in either notice, copies of

which are contained herein.  Furthermore, I am authorized to inform you that he

will not participate in discovery depositions or trial depositions in these cases."**

(Emphasis added).  Again, Durrani's lawyers made representations no depositions now or

ever.  This was coming in this story would be proven false.

136.     On March 21, 2017, Deters Law confirmed the upcoming depositions are

canceled.  Deters Law had tried again and failed based upon Durrani's lawyers'

representations no depositions now or ever.

137.     On March 24, 2017, Paul McCartney by email stated: **"He will not be

appearing."**  Again, Paul McCartney, not the brazen Michael Lyon, again uses the careful

phrase- "not be appearing."  He doesn't claim communication or refusal.

138.     March 31, 2017 was the scheduled date for Durrani's deposition.  It never

happened.

139.     In a letter dated April 26, 2017, to Paul McCartney from Deters Law, reflects Deters Law explaining why Paul McCartney had the culpability in the Durrani deposition issue.  Paul McCartney is obviously worried.  Of significance, Paul McCartney refused to agree to give an in-camera review proof to Judge Barrett of proof  Durrani ever received the Order to compel the deposition.

140.     On May 3, 2017, in the *Atwood* cases, Judge Barrett entered a contempt Order. As of June 2, 2017, Durrani was in contempt of that Order.   Durrani never complied.

141.     In a Notice of Filing Recent Discovery Answers of Durrani and CAST in Support of Rule 37 Sanction is discovery was answered by David Williamson of Lindhorst, Medical Protective's attorney and agent.  The requests were sent in every state case. Durrani did not verify the answers.  Williamson claims Durrani assisted in Interrogatory #1.  **Every question was objected to #2-25 under privilege even though it was not privileged except #18:  Are you willing to give a deposition in this case to defend your treatment of the Plaintiff?  Answer:  "No."**  This is May 9, 2017.  Again, a representation by Durrani's lawyers that Durrani is not cooperating.  This would be proven a complete lie.

142.     On May 23, 2017, an Order was circulated as in *Atwood* for the state cases.  Not one defense lawyer responded or signed it.  They ignored the request. They did not want another Order to compel entered against them.

143.     On June 1, 2017 a letter from Michael Lyon is the first and ONLY time from 2013 through June 1, 2017, where there was a communication to Deters Law in which Durrani would give a deposition with restrictions including one a month.

144.     The letter dated June 2, 2017 details Deters Law response to Michael Lyon's deposition parameters and outlines the recent deposition history and rejects the restrictions.

145.     The June 8, 2017 email exchange between Michael Lyon and Plaintiff's counsel, Matt Hammer, reflect Michael Lyon's anger his 40-year scheduled deposition proposal was rejected.

146.     On June 9, 2017, Deters Law informed the judges there would be no deposition based upon Michael Lyon's preposterous plan.  By this point, Deters Law simply wanted a sanction for Durrani "refusing" to give a deposition for four (4) years.

147.     On June 26, 2017, Judge Jennifer Sargus set her first hearing and made it about sanctions.  Of note, Michael Lyon's representation on page 32 line 25 to page 33 line 10: **"Well, what do we have here?  We have a situation where they have asked for Durrani's deposition for three and a half years, and during which time, for the most part, he said, I'm not going to do it.  Okay.  But now, your Honor is in this litigation, and now Durrani says he will do a deposition in every single case.  That's the state of the evidence right now; that's the state of the situation right now." (Emphasis added).** For the most part?  According to Michael Lyon and Paul McCartney for four years, he was never giving one.  Michael Lyon avoided a deposition for five years.  **He now attempted to delay trials further by offering Durrani for depositions, one a month for 500 plus cases (a 40 year process).**  It was absurd.

148.     At this hearing, Judge Sargus also wanted to focus on trials, not dispositive motions.

149.     At the June 2017 hearing before Judge Sargus, Paul McCartney stated as to

Durrani: "He still needs to make a living."  As if Durrani deserved sympathy.  And,

Deters Law learned Durrani's Pakistan license had been suspended based upon the U.S.

events.

150.     Paul McCartney also claimed, "Because Mr. Lyon had more of the

communication than I did."  There is no question in this entire story:  Michael Lyon was

and is the lead contact with Durrani.  He's the "handler."

151.     Paul McCartney also asked that juries be told the same sanction used at Butler

County trials with: **"perhaps with instruction that Durrani has refused to give a**

**deposition and maybe you can draw a negative reference from it."**

152.     On July 10, 2017, Charles Deters of Deters Law sent a letter to Michael Lyon

proposing five-day long depositions alone for ALL cases.

153.     On July 14, 2017, Michael Lyon informed Charles Deters that Durrani rejected

five days of depositions for all cases. This defied all logic.   Durrani and his lawyers

would prefer over five hundred depositions to five depositions.

154.     On July 24, 2007, Judge Sargus entered an Order pertaining to possible sanctions

and the potential depositions of Durrani.

155.     On October 26, 2017, Deters Law made a demand on George Jonson, Michael

Lyon's legal counsel.  There would be no response.

156.     On October 30, 2017, Deters Law sent a letter to Michael Lyon to Paul

McCartney and copied it to the Court.  Deters Law requested video depositions of

Durrani.

157.    On January 22, 2018, Deters Law accepted the first three dates offered for

deposition offered by Michael Lyon.

158.    On January 30, 2018, Deters Law informed Michael Lyon and Paul McCartney

the deposition would be on all cases.  This was a purposeful and strategic decision by

Deters Law on behalf of the Plaintiffs.  By noticing and taking the deposition in all cases,

Defendants could never claim then or in the future that Durrani failed to cooperate.

159.    Of interest, after refusing this option of on all cases for months, Michael Lyon

never even responded to Deters Law declaration the deposition would be in all cases.

Why?  Because he did not care.  He knew his delay game was up and his delays had

served their purpose.

160.    Deposition notices in *Atwood,* ten federal cases in Judge Barrett's Court*,* and all

state cases for February 24, 2018 were sent out.

161.    By letter, Michael Lyon attempted to unilaterally cancel the deposition of

February 17, 2018 based upon Durrani needing to talk to his criminal lawyer, Ed Perry,

of Rittgers & Rittgers**.**  Imagine, after all the years, that was the excuse given.

162.    The on the record transcript of the February 17, 2018 deposition did not happen.

Deters Law did not consent to the cancellation.

163.    A February 24, 2018 deposition which did happen.  However, it was promised for

ten (10) hours.  After six hours, Durrani said he was tired.  It only went an hour more.

164.    Now take all which has been detailed regarding  Durrani allegedly not

cooperating and refusing a deposition and compare to the following excerpts from his

testimony at the February 24, 2018 deposition on pages 35-37, 57-58, 60-69 and 93-95:

> **Q:  Did you ever tell Medical Protective that you would be unable to cooperate in the defense of the medical malpractice cases filed against you?**

**A.  No.**

**Q.  So you never sent a letter or an email that would say something to that effect, is that correct?**

**A.  Not – not to my – not to my knowledge. I have always maintained that I would like to participate in the defense of these cases.**

**Q:  You never received any letters to that effect?**

**A.  I got letters, or emails, correspondence from Medical Protective.  And I've always said that I will like be a participant in the defense of these cases.**

**A.  I have no problem.  I have no problem whatsoever being deposed in every single case that you're referring to defend my medical decision-making.  I absolutely have no issue with that.**

**A.  I said I have absolutely no issue in defending my medical decision making in each and every single case.  And I have time and again reiterated my position that I will be happy to defend myself and in the defense of these cases as far as the medical decision making is concerned in these cases.  I have no issue whatsoever with that.**

**Q.  And you've been asserting that position since 2013, correct?**

**A.  I've always maintained that position.**

**Q.  Were you aware that the Deters Law firm has been asking for your deposition numerous times since 2013?**

**A.  I've always – as I said, I will maintain that as long as – as long as the deposition only relates to medical decision making, I'm very happy to participate in the defense of these cases."**

**Q.  Were you aware though, that requests for your depositions have been occurring since 2013?**

**A.  No.**

**Q.  So you're unaware of deposition requests until the deposition today, is that right?**
**Mr. Lyon:  I'm going to instruct you not to answer that question.**

**Q. Were there problems prior to now giving depositions between 2013 and today?**

**A.  I've always maintained that as long as the depositions are limited to the medical decision-making of any individual pertinent cases, I'm more than happy to be deposed and defend myself.  That has been my constant position from day one.**

**Q.  Were the requests sent to you in the mail?**

**Paul McCartney:  Objection.  Don't answer that.**

**Q.  How did you communicate with counsel to work on your discovery requests?**

**Michael Lyon:  Objection.  Do not answer.**

**Q.  Various answers have been filed in the lawsuits that were filed by the Deters Law Firm.  Did you have an opportunity to review those answers before they were filed?**

**Mr. Lyon:  --answers to the pleadings?**

**Mr. Statman:  I said the answers to the lawsuits –**

**Mr. McCartney:  I'm going to instruct you not to answer that, Doctor.**

**Q.  Did you approve the answers that were filed in the lawsuits against you?**

**Michael Lyon:  Objection.  Do not answer, Atiq.**

**A.  Okay.  I will always maintain that I will participate in the defense of these cases from day one.  And that has been my constant position.**

**Q. I asked you if you received any letters from Medical Protective.  Do you recall whether you responded to any letters from Medical Protective?**

**Michael Lyon:  Objection.  Don't answer that question.**

**Q.  Were you aware that your deposition was once scheduled for November 26, 2014?**

**A.  You know what, I don't – I don't recall it.**

**Q.  Do you recall that your deposition was once set for January 22, 2014?**

**A.  Don't recall.**

83

**Q. Was there a time in 2014 that you stopped communicating with your counsel?**

**Mr. McCartney:  Objection.  Don't answer that.**

**Q.  Your counsel informed us that recent efforts to communicate with you had been fruitless.  Were you aware that they sent that correspondence to the Deters Law Firm?**
**Michael Lyon:  Objection.  Don't answer that question.**

**Q.  If I understand your testimony about wanting to defend yourself, had you known about the depositions dates that had been previously set, you would have wanted to be there to defend yourself, correct?**

**Michael Lyon:  Objection.  I instruct him not to answer that.**

165.     None of the above questions asked for privileged information.  The instructions not to answer were not proper.  **The instructions to Durrani not to answer were to protect the Defendants' conduct over the last five years, not Durrani.**

166.     It is impossible to reconcile all which Michael Lyon, his partners and associates, Medical Protective and their counsel claimed from 2013 to June 2017 and the above testimony of Durrani.

167.     It must be stressed after the February 24, 2018 deposition, Durrani is now a witness against all of them.  He will be a witness in this case.

168.     Not ONCE until June 2017 did Michael Lyon offer a "limited deposition to specific case."  This was something Michael Lyon concocted and clearly why Durrani stated it in his testimony.  This was his position since June 2017 based upon Michael Lyon's decision not for prior years.  There was never any "specific case" deposition offered to Deters Law for Plaintiffs in 2013, 2014, 2015 and 2016 and half of 2017.  Since 2013, Durrani's testimony under oath is clear.  He wanted to cooperate in his defense and defend from day one.  Depositions were no issue.

169.     **At his February 24, 2018, five year in waiting deposition, Durrani proved everything Michael Lyon and Medical Protective had claimed for five years pertaining to Durrani's lack of cooperation and refusal to provide a deposition as false.  On February 24, 2018, Durrani repeatedly made it clear, under oath, that he wanted to cooperate in his defense to use his words "from day one" and he was willing to give depositions "from day one."  His words.  For five years, Michael Lyon and Medical Protective represented to Deters Law and to every Court hearing any part of the litigation that Durrani was unwilling to give a deposition.  They made those representations in writing and in open Court.  It is a serious consequential fraud of epic proportions.  It is also bad faith and unfair claims practices.**

170.     Also, Medical Protective and Michael Lyon make it clear over and over, from the outset, Durrani and CAST are Michael Lyon's clients, not Medical Protective.  Yet, Medical Protective insured him and paid Michael Lyon and his firm.

171.     Deters Law has had to fight a federal insurance coverage battle against Medical Protective based upon the fraudulent lack of cooperation claim.  The issue was used against Deters Law and Plaintiffs in settlement discussions.  The issue delayed trials in 2015, 2016 and 2017 in front of Judge Ruehlman.  Plaintiffs who had a trial were cheated out of the deposition.

172.     Michael Lyon, his partners and associates involved and Medical Protective officials must be placed under oath and forced to produce correspondence, documents, emails, phone records on the issue of Durrani's cooperation and deposition.

173.    **Medical Protective attempted to take advantage of Durrani's flight by feigning lack of cooperation by Durrani and challenged coverage in a federal lawsuit.**

174.    **The lawsuit failed, so Medical Protective then attempted to defend the cases by Durrani cooperating by giving depositions in 2018.**

175.    In February and March 2018, Durrani sat for two long depositions noticed for all cases, including Plaintiff's.  The reason Plaintiff's counsel did this was so Medical Protective could never again claim lack of cooperation. There would be sworn testimony by Durrani in every case**.  At these depositions, Durrani revealed he had always wanted to give a deposition.  For five years, Defendants claimed he would not or could not reach him.**

176.    **Medical Protective and its agent, Michael Lyon, after the deposition scam, then tried Durrani testifying by video depositions for each case which went to trial.**

177.    **When Durrani lost those trials, they decided to stop having Durrani give trial video depositions.  By doing so, they limited adverse evidence and testimony.**

178.    **All of these decisions have been made wholly by the Defendants.   Durrani has not made these decisions.**

179.    In a March 13, 2020 email to Durrani, Richard Marcello continues Medical Protective's charade of non-cooperation, writing that because Durrani refuses to cooperate, he is in breach of his policy.  However, Durrani has always adamantly denied ever not wanting to testify in any case or deposition.  When Durrani did testify in February and March of 2018, Medical Protective did not ask him even one question.

180.     Judge Black has already rule against Medical Protective on the issue of coverage.

181.      In the Durrani letter that Marcello cites but does not provide, Durrani allegedly

wrote, "After considerable thought I feel my participation so far in this process has

actually hampered the overwhelming scientific evidence in these cases due to the

prevailing bias.  So it is my decision that I will recuse myself from further participation in

these cases."  Interestingly, Lindhorst Attorney Mike Lyon uses the same language on the

record in case after case.

### CREDIBILITY OF MEDICAL PROTECTIVE AND MICHAEL LYON

182.      The conduct alleged and will be proved is typical of Michael Lyon and Medical

Protective.  It is consistent with their past practices.  It's important for the Court to have

an understanding of who the Defendants are.  They are not a choir of angels and they are

not honorable men in this Durrani litigation.

183.      There are at least four published Ohio cases where Michael Lyon's history of

serious misconduct is pronounced.

184.      Michael Lyon has on numerous occasions sent inappropriate and unethical ex

parte emails to at least one Judge in the state civil actions.

185.      We have the transcript and we have requested the audio, where in the *Martin* state

trial, Michael Lyon is screaming at the Court for more than a few seconds.

186.      Michael Lyon represented to a Judge in a state civil action, *Shell*, that he was the

records custodian of CAST, then, not thinking anyone would remember the weekend

before trial, stated there was no custodian and we could not introduce Durrani's records.

When confronted in Court by hearing a transcript, he asked if he could change his mind

about being record custodian.

187.     Michael Lyon repeatedly misrepresented attempts in the scheduling of the depositions of Dr. Tayeb and Dr. Shanti, two of Durrani's former employees.  While telling Plaintiffs' counsel he was "working on it," neither Michael Lyon, nor his office, ever attempted to schedule Dr. Shanti or Dr. Tayeb for deposition.  This was discovered when Dr. Shanti and Dr. Tayeb came forward to testify on behalf of the Plaintiffs and advised they were never contacted by Michael Lyon or his office to give depositions.  The same scam he played in Durrani's deposition.

188.     Michael Lyon refused to stipulate to medical records and Plaintiffs' counsel was forced to go to the time and expense of issuing a subpoena him for the records.  Michael Lyon, in open court on more than one occasion, has stated he would not comply with the subpoena.

189.     Michael Lyon has claimed in his defense he would not do all which alleged regarding Durrani's flight because it would hurt him and his firm if there was no coverage.  This statement is completely unfounded because Mr. Lyon knew and knows Medical Protective would have to file a Declaratory Judgment Action and still have to pay him and his firm to defend Durrani at least under a reservation of rights, and that is exactly what has happened.

190.     Medical Protective on their national website brags Michael Lyon is one of their leading trial lawyers to carry their water.

191.     These are published and reported cases and verdicts throughout the U.S. finding Medical Protective culpable for bad faith and unfair claims practices.

192.     It is impossible to reconcile what follows in this story which is supported by all the evidence with what Durrani testified to at his deposition on February 24, 2018.

193.     For five years, Michael Lyon sent letters, filed pleadings and stood in Court passive aggressively acting as if they were "sorry" this is the way it was.

194.     Until recently, EVERY Judge handling these cases except Judge Robert Ruehlman and Judge Michael Barrett allowed Durrani to avoid any repercussions for not giving a deposition.  Of course, if Plaintiffs refused a deposition, their case would be dismissed.

195.     Rather than sanction Durrani for not giving a deposition, Judge Guy Guckenberger initially only instructed the juries "Durrani elected not to be here."  Post-trial, the juries were shocked to hear the truth.  They were angry.  They confessed they wish they knew the truth.  They just thought Durrani was simply out dedicating his time to "doctors without borders" or other worthwhile causes.

196.     *Plaintiff, Brenda Shell* and *Tim Marshall* had to suffer through the "elected not to be here" instruction to the jury.

197.     Next, judges simply instructed juries that Durrani "left the country" in the *Julie Martin* and *Laura Kranbuhl McKee* trials, with no context to the statement.

198.     Not having a Durrani deposition profoundly and certainly affected the outcome of the *Shell*, *Marshall*, *Martin*, and *McKee* trials in Butler County.

199.      Durrani's deposition was read in *Pierce* and a jury awarded a $1.04 million-dollar verdict.

200.     Not only has Durrani fled to Pakistan, he never gave another deposition from 2013 to 2018.  He had given six prior to his arrest.  As the Court knows, a deposition is sworn testimony and would have allowed Plaintiff's counsel an opportunity to cross-

examine Durrani on all issues relating to each case and his credibility, background and resume.

201.     While in Pakistan Durrani is beyond the subpoena power of any U.S. Court, and Plaintiffs did not have the option to force the deposition.

202.     Not having Durrani's deposition has affected trial strategies, witness arrangements, trial preparation and presentation.  Plaintiffs had to expend extraordinary attorney time fighting federal declaratory action.  Also, Plaintiffs spent extraordinary attorney time pursuing a sanction against Durrani for not giving a deposition to no avail.

**MICHAEL LYON'S ADMISSION OF CLAIM AND LAWSUIT REVIEW PROCESS**

203.     On April 30, 2019, on the record at a preliminary hearing on prejudgment interest on a Plaintiffs' verdict before Judge Brogan, Michael Lyon detailed the manner in which the Defendants decide to defend every case.  He outlined the very bad faith and unfair claims practices they have been engaged.  It also reflects how Michael Lyon claims Medical Protective is not making offers based upon the advice of Michael Lyon, the lawyers and agents.  **Michael Lyon, the great oscillator, enjoys telling Deters Law he has no authority and only Medical Protective decides offers.  Yet, he also claims he tells them he can defend the cases and should not settle.  Yet, he has told Al Statman a "monkey" could win the cases for Plaintiffs.**  Yet, no offers are made and Plaintiffs are forced to try cases a "monkey" could win.  It's all one big bad faith, unfair claims practice by Defendants.

204.     In April 30, 2019, on the record with Judge Brogan, Michael Lyon stated as follows:

**MR. LYON: Judge, I can cite 25 instances over 34 years where I've had my clients/doctors say to me, Please settle this case, I want you to settle this case. They**

90

get personal counsel. They write me a nasty letter saying, If you don't settle the case, blah, blah, blah.

MR. LYON: And we try the case 25 times. The other side of the coin is normally what happens is we evaluate the case, the doctor signs a note saying I don't want to settle, the company agrees and we try the case, and then there's times when we say, Maybe we should resolve this, they sign it, but then the fourth category, we've had situations where we've begged the doctor, You got to settle this case. No, I want to go to trial. We go to trial. So there's four different versions of this. But I want the Court and the record to reflect that's not an issue in this case. Durrani's consent or willingness or not was not the impediment, was not taken into consideration.

MR. LYON: So we do a literature search and see if it matches up, see if there's sound literature supporting what the physician did. Then we interview our doctors. We go over the case with them. Then we go to our -- we find -- we go to the experts. Experts, all they're doing is giving you opinions. Again, those opinions can match up with the literature or they cannot match up with the literature. To me, the objectivity of this analysis has to do with -- the bottom line is, is it in the literature? Is it supported? Is it not? Do we talk -- you know, do you talk to your client about the risk, the benefit? I call it legal informed consent. We absolutely do. And here's how I discuss it with doctors. I say, Okay, we can try this case 100 times. This is where I live, in the courtroom. If we try this case 100 times in Hamilton County, Ohio, we're going to win 85 out of a hundred, but that means we're probably going to lose 15 out of a hundred. Okay? And then I say, Okay, the ones we lose, the 15 out of a hundred, what's the verdict range? And I give them a verdict range of the 15 out of a hundred. And that's the best I can do prospectively as a trial lawyer. I do this statistically because doctors understand that, and that's the analysis I give them. Now, if I may go to this case, I think I'll take this a step at a time and I'll show you how we went about it. First, fully cooperated in discovery proceedings. I'll get the Court the exact dates that they asked for Durrani's deposition, but I do submit that I think the trials that were set, there was no delay. Durrani ultimately gave a long seven – or eight-hour deposition that was represented to be the one and only discovery deposition they needed in all of the cases, which is fine. He did do that.

MR. LYON: I just don't think the law in Ohio, Judge, is that we are required to make an offer simply by virtue of the fact that the plaintiffs have made a demand. I think that once we've satisfied ourselves that, in our opinion, that it's defensible, it's a solid defense in terms of based on the medicine, whether we use the articles of court not as a tactical decision, I think it has to do with our analysis.

MR. LYON: I can assure you that he would testify that he wouldn't want to settle, he didn't do anything wrong, he thought it was the right thing to go to trial.

THE COURT: What if he had said --assuming he had said, I told them to settle the case –

MR. LYON: Oh, then we would have to consider that.

MR. LYON: Well, you're leaving a step out. I can assure you, particularly in the context of this, if Durrani in any of these cases said to me, Hey, I want this settled, I'm demanding you to settle this case, believe me I would have put that in writing to the insurance company and we would have conferenced it and gone from there.

MR. LYON: But my point is, like Judge Barrett's cases, there's no way I would have paid a penny on any of those cases knowing that Judge Barrett was going to read these indictments to the jury because I felt it was so egregious, whether I'll be justified in an appeal or not, I don't know. So the fact that things are happening in these courtrooms that are making it much, much more difficult to prevail on cases on behalf of Durrani doesn't preclude me from still arguing strenuously in his behalf. Why? Because half of these verdicts are personal to him, and I have a duty to prevent, not only a compensatory judgment, but this fraud, all of the intentional torts that are being mixed in here. So I can' -- I have that duty to him. And I know the idea that if they can't collect, they can't that, that still doesn't alleviate my duty.

THE COURT: We're not here for a malpractice case. We're here as if on a prejudgment interest.

MR. LYON: Right.

THE COURT: And we're trying to decide whether Durrani made a rational decision not to settle the case. And you represent to us that he told you in this case not to settle, is that right, or you can't -- well, you can't –

MR. LYON: I can't tell you what he told me.

THE COURT: I understand.

MR. LYON: Let's put it this way, I can represent to you the Court that he didn't tell me not to, but I don't want to -- I don't want to misrepresent to the Court either. I didn't tell him to settle it.

THE COURT: Right.

MR. LYON: I didn't say that you need to settle this case based on what I'm seeing here.

MR. LYON: That happens, but believe me, I don't have the bottom -- when it comes to resolution and money and settlement and decisions, Judge, the insurance company makes that decision.

**MR. LYON: Oh, absolutely. Most importantly, the thrust of my position, as I started out saying, I evaluate the cases, Judge, from a medical standpoint, Can I defend this case by the medicine? That's what I stand by. That's what I tell the doctor. Listen, there are cases where I say, we can't defend this case. The medicine -- nothing supports us. I can't find an expert, you know.**

205.    Lindhorst continues trying cases without any communication and input from Durrani.

206.    On July 3, 2019, by letter, Ben Maraan asked Rick Weil of Reminger & Reminger (a new law firm retained to defend Durrani along with the Lindhorst firm): "Can you contact Durrani directly and determine whether or not he will give video testimony at trial?  Thank you."  There was never a response.

207.    On July 3, 2019, another letter was sent to attorney Rick Weil from Ben Maraan:

When you communicate with Durrani about testifying, can you ask him about this attached proposal?  We were unable to obtain a response.  We can't imagine Durrani would not be interested in assigning his bad faith claim in exchange for all criminal charges being dropped and his ability to travel freely in the U.S. and the world.  We ask you not address this with Ed Perry and Mike Lyon because we believe they purposefully blocked it.

There was never a response.

208.    Reminger & Reminger has admitted they are not communicating at all with Durrani.  They only communicate with Lindhorst and Medical Protective.

209.    Now, a third defense firm is involved in representing Dr. Durrani, paid for by Medical Protective, and they refuse to answer the question if they have any communication with Dr. Durrani.

210.    The above represents charade and the games played by Michael Lyon and Medical Protective on settlement issues since before Plaintiff's trial.  It's enough to make

one dizzy: Is it Durrani? Is it Michael Lyon? Is it Medical Protective? Defendants pick

and choose who makes the call as that pick and choice suits them at the time.

### REFUSAL TO ADVISE DURRANI OF PROPOSAL ON
### HIS BAD FAITH CLAIM AGAINST MEDICAL PROTECTIVE

211.     Medical Protective acted in bad faith to Plaintiffs in refusing to communicate a

proposal to Durrani from the Plaintiffs in which Durrani would assign his bad faith claim

to Plaintiffs.

212.     Plaintiffs are confident Michael Lyon, Durrani's civil counsel, and Ed Perry of the

*Rittgers* law firm, alleged Durrani's criminal defense counsel, NEVER took the proposal

to  Durrani for the assignment of his bad faith claim to the victims.  It was a simple deal.

Durrani would assign his bad faith claim to Plaintiffs.  His bad faith claim is the

Defendants' failure to protect him from excess verdicts and punitive damages.  Plaintiffs

would convince the U.S. Attorney to drop the criminal charges.   Durrani could return to

the U.S., but he would obviously never practice medicine in the U.S. again.   Durrani

would also be able to travel the world freely because there would no longer be an

international arrest warrant.  Plaintiffs know Defendants and Ed Perry did not inform

Durrani of this proposal as then were obligated to do for several reasons:  Durrani would

leap at the chance to return to the U.S. and travel the world freely; Defendants have a

history of doing this, including not discussing a deposition with him for five years AND

our proposal was not in Medical Protective's best interest.

213.     This proposal was detailed in a letter dated October 22, 2018 to Michael Lyon to

forward to Durrani.  Michael Lyon, it is alleged, never sent the letter to Durrani as was

his legal and ethical obligation because he was acting on behalf of the Defendants, not

Dr. Durrani.

## DEFENDANTS "SIDE SHOW" SCAM

214.     Over the years, Michael Lyon repeatedly claimed the "side shows" of the lawsuits

against him and his law firm were the impediment to the settlement.  He of course lied.

215.     It is important to stress that Medical Protective pays Lindhorst & Dreidame and

Michael Lyon to defend Durrani.  Medical Protective and defendant Ignasiak conduct

their unfair claims practices through Lyon and Lindhorst.  It is common defense parlance

for defense attorneys to claim their obligation is to the doctor, not the company.

However, in reality, defense counsel must answer to the insurance company for ALL

which they do.  Michael Lyon has repeated this over and over to Deters Law.

216.     These have been three filings against Medical Protective and Michael Lyon and

his law firm:

Case No. 1:15-cv-691 filed October 21, 2015 in Southern District of Ohio.

Case No. 1:17-cv-00844 filed December 15, 2017 in Southern District of Ohio.

Case No. 1:18-cv-00173 filed March 9, 2018 in Southern District of Ohio.

**These three cases only brought claims for fraud and conspiracy to commit fraud on**

**Durrani's flight issue.  They did not bring claims for bad faith or unfair claims practices on**

**all other facts before or since.  There is no collateral estoppel or res judicata here.**  They

were dismissed at the request of Michael Lyon and Medical Protective as part of an informal

mediation in 2018 conducted by U.S. District Court Judge Michael Barrett.  Defendants insisted

it be with prejudice and in return, they would mediate in good faith.  After the cases were

dismissed, Medical Protective continued to act in bad faith and unfair claims practices.  The

allegations made in these three federal lawsuits also support bad faith.  In addition, from those

dismissals to now, bad faith and unfair claims practices continued.  Each step of the way has been another actionable step.

217.　　Those three federal cases do detail the history of the shenanigans by Michael Lyon and Medical Protective.  Some of it is repeated here for background.

218.　　Michael Lyon promised Plaintiffs good faith negotiations if we dropped litigation against him and Lindhorst.  We dropped it at Judge Barrett's request based on Michael Lyon's representation.  Judge Barrett fell for it too.  After we dropped the litigation, Medical Protective offered the insulting and preposterous sum of $4 million to settle over 400 cases.

219.　　Michael Lyon told Al Statman, Plaintiffs co-counsel, that during the *Atwood* trials if we dismissed the cases against him, he would "drive to Ft. Wayne" and there would be good faith settlement talks.  Ft. Wayne, Indiana is the headquarters of Medical Protective.  We dismissed the cases without prejudice.  Judge Barrett informed us Michael Lyon said it would only happen if it is "with prejudice."  We did.  Nothing happened.  It was nothing short of a fraud on a federal judge, Deters Law and Plaintiffs.

**QUANTIFYING THE BAD FAITH AND UNFAIR CLAIMS PRACTICE**

220.　　From the time of Plaintiff's trial to the present, Medical Protective has not made one offer on one individual case, including Plaintiff's case.  As further evidence of its unfair claims practices and bad faith, Medical Protective has not made one group offer except in 2017, $2,000,000 and during the time of the 2018 six *Atwood* trials of $4 million, all to settle over 400 cases.  This amounts to $10,000 a case when the verdicts are averaging over one million dollars.  The cost to defend the cases exceeds $100,000 each.  That alone justified a limits offer.

96

221.     To this day, despite the verdicts, Medical Protective has NEVER offered more

than $7 million to settle over 400 claims against their policies.  This, after Medical

Protective has repeatedly claimed verdicts would be necessary to assess the value of the

claims.  Plaintiff got a million-dollar verdict; and now many others have as well. Yet,

nothing has changed.

222.     The amount of their coverage of $42 million, rounded down to $40 million, would

be only $100,000 a case.  This amount is far less than what Medical Protective pays

Durrani counsel and experts to defend a case through trial.  Michael Lyon told Eric

Deters in  2013 it was about $125,000 to defend a case through trial.  Medical Protective

has failed to even offer a cost of the defense to these cases.

223.     There have been confidential settlements with West Chester Hospital and

Children's Hospital (two of the hospitals where Durrani "operated" on people) which will

be used as a comparable in support of bad faith under sealed conditions.  In other words,

those settlements help prove the egregious bad faith and unfair claims settlement

practices of Medical Protective.  For example, to reach West Chester/UC Health liability,

Plaintiffs had to obtain a verdict against Durrani first.  Despite this burden, West

Chester/UC Health settled and that settlement helps prove egregious bad faith.  While

West Chester/UC Health and Children's conducted discovery, took into account trials and

their results, nothing matters to Defendants.

### CORRESPONDENCE IN SUPPORT OF CLAIMS

224.     Before covering the trial evidence in support of claims, it's important to cover

more evidence as pled.

225.     An exhibit at trial will include a February 20, 2013, letter to Michael Lyon from Eric Deters, after the filing of the second seven lawsuits being filed.  This followed after the original six which were filed.  This letter was sent while the Pierce case was still at the pre-trial phase. **There was no response**.

226.     An exhibit at trial will include a March 20, 2013 letter to Michael Lyon from Eric Deters making claims against coverage.  From that date to now, there has not been any offer on one of the cases**.  There was no response**.

227.     An exhibit at trial will include a June 13, 2013, letter to  Defendants' counsel from Eric Deters detailing the massive plan of discovery.  **There was no response**.

228.     An exhibit at trial will include an August 21, 2013, letter to Michael Lyon from Eric Deters regarding Durrani's personal exposure.  **There was no response**.

229.     An exhibit at trial will include January 20, 2014, letters to Michael Lyon from Eric Deters representative of letters sent on all cases making demands.  **There was no response.**

230.     An exhibit at trial will include a March 25, 2015, Order for Mediation by Judge Guckenberger. Plaintiff's verdict was still on appeal.  **There was no offer at the mediation**.

231.     An exhibit at trial will include an August 30, 2015, letter from Eric Kennedy, Plaintiffs' counsel for mediation, to Steven Janik outlining the value of the cases.  **There was no response**.

232.     Although it post-dates payment by Medical Protective, An exhibit to be used at trial will include an October 27, 2016, letter to Judge Barrett from Matt Hammer, Deters Law attorney, referring the facts supporting the fraud claim against Michael Lyon. It

shows that Unfair Claims Settlement Practices was Medical Protectives strategy from the beginning.

233.     An exhibit at trial will include an October 27, 2016, letter to Steven Janik from Matt Hammer requesting the limits of insurance.  There was no response. It shows that Unfair Claims Settlement Practices was Medical Protectives strategy from the beginning.

234.     An exhibit at trial will include an October 27, 2016, letter to George Jonson, Michael Lyon's counsel, from Matt Hammer demanding the limits of insurance.  **There was no response.** Their strategy from the beginning. They knew even before Pierce filed her lawsuit the extent of Durrani's liability.

235.     An exhibit at trial will include a November 1, 2016, letter to George Jonson from Matt Hammer.  **There was no response.**

236.     An exhibit at trial will include a November 7, 2016, letter to Steven Janik from Matt Hammer making a demand on the *Crystal Pierce* jury verdict.  **There was no response**.

237.     An exhibit at trial will include a November 8, 2016, letter to Steven Janik from Matt Hammer demanding the insurance limits.  **There was no response.**

238.     An exhibit at trial will include a November 10, 2016, letter to Judge Barrett from Matt Hammer explaining how irrational Medical Protective was being and ignoring our letters.

239.     An exhibit at trial will include a December 29, 2016, letter to Defense Counsel from Matt Hammer outlining demands in all cases.  **There was no response**.

240.     An exhibit at trial will include a January 11, 2017, letter from Matt Hammer to Steven Janik making a demand in the Potts case.  **There was no response**.

241.     An exhibit at trial will include a January 16, 2017, letter from Matt Hammer to West Chester Counsel outlining bad faith. The same bad faith is applicable to Medical Protective.

242.     An exhibit at trial will include a January 23, 2017, letter from Walt Haggerty to Matt Hammer referencing Medical Protective offering $2 million to settle all cases while Children's and West Chester offered a combined $19 million. Children's offer only covered 100 cases. West Chester stood behind Durrani. All offers were rejected.

*243.     In Medical Protective's claim file, they tried to claim this 2-million-dollar global offer was "in good faith" despite being woefully low, and lie about Deters Law Firm responding.*

244.     An exhibit at trial will include a June 2, 2017, letter to Michael Lyon from Charles Deters outlining our position against Medical Protective. There was no response.

245.     An exhibit at trial will include an October 23, 2017, letter to Judge Barrett and John Cruze from Matt Hammer outlining a target of $30 million from Medical Protective. There was never any offer. That is no longer an option.

246.     An exhibit at trial will include a December 1, 2017, letter to Judge Barrett from Charles Deters again outlining the $30 million target. There was never an offer.

247.     An exhibit at trial will include a December 20, 2017, email from Matt Hammer detailing our position. There was never a response.

248.     An exhibit at trial will include a January 30, 2018, letter to Michael Lyon from Matt Hammer regarding Durrani deposition after five years of intentional sabotage of the deposition.

249.    An exhibit at trial will include a May 11, 2018, letter to Michael Lyon from Fred Johnson requesting a proposal.  None came.

250.    An exhibit at trial will include a July 6, 2018, letter to Alan Statman, lead Deters Law trial counsel, to Michael Lyon outlining coverage and cases by year.  There has never been a single offer or tender of limits by year.

251.    An exhibit at trial will include a July 11, 2018, letter to Michael Lyon from Fred Johnson, Deters Law attorney, demanding the limits and explaining why.  There was no response.

252.    An exhibit at trial will include a September 21, 2018, letter to Michael Lyon from Charles Deters rejecting the $4,000,000 oral offer.

253.    An exhibit at trial will include an October 4, 2018, letter to Judge Barrett from Charles Deters outlining our position on Medical Protective for mediation.  There was no response from Defendants.

254.    An exhibit at trial will include an October 22, 2018, letter to Michael Lyon from Ben Maraan, co-Deters Law trial counsel, explaining how Medical Protective was exposing Durrani to excess coverage judgments.   Durrani's personal lawyer was copied.  There was no response.

255.    An exhibit at trial will include a January 8, 2019, email from Charles Deters to John Cruze regarding Medical Protective's $4 million global offer.

256.    **An exhibit at trial will be an email from Michael Lyon to Alan Statman in 2019 stating when Mr. Lyon returned from vacation, they need to meet with Rich Marcello, the claims handler operating out of MedPro's Louisville, Kentucky office.**

**That meeting has never taken place.  Mike Lyon constantly makes these types of statements to no avail.  Ever.**

257.    In early 2018, there were individual written demands sent out on every case. Defendants ignored every one of them without a response.

258.    In total, there have been over 500 ignored letters and emails pertaining to resolution of Plaintiffs' cases by Defendants.

## TRIAL HISTORY SUPPORTING ALL CLAIMS

259.    A history of the trials is important in support of the claims.  It is shocking and is probably unprecedented both by the success of Deters Law and the refusal to resolve claims in the face of verdict obliteration.

260.    On January 12, 2017, Glenn Feagan met with Steve Janik at Janik's Cleveland office.  Defendant Robert Ignasiak attended.

261.    At this meeting, Glenn Feagan communicated Deters Law would never recommend less than $21 million to their clients.  The plan at the time was for Deters Law and Plaintiffs to settle with Medical Protective at a bargain and focus on West Chester/UC Health.

262.    At the meeting Janik and Ignasiak, with the prior authorization of Kenesey, related the following to Glenn Feagan:

A.    Janik and Ignasiak claimed only $27 million in coverage.  This was a mistake. They left out coverage on CAST too.  This misrepresentation is also an unfair claims practices violation.

B.    Janik and Ignasiak broke down the number of claims by years:

2009- 103

2010- 115

2011- 91

2012- 75

2013- 30

C. Janik and Ignasiak claimed after a trial, Deters Law would have to win another trial on coverage.  That is no longer true after Durrani's February and March 2018 depositions in all cases where he fully cooperated.

D. Janik and Ignasiak claimed they were using a model with Deters Law winning only 20% of the trials.  Deters Law is winning nearly 90% of the trials.

E. Janik and Ignasiak factored an average verdict of $300,000.  Deters Law is averaging over $1,000,000 a verdict and nearly all of the aggregate award is covered by policies.

F. Based on the above, Janik and Ignasiak factored in a 20% success rate in the coverage trials after the trial.  Coverage trials are no longer needed so this is 100% in Plaintiffs' favor.  And, it's ridiculous to place this at 20% when a judge or jury who decided the underlying case in favor of a Plaintiff would likely also rule in their favor on coverage.  Regardless, this is no longer necessary.

G. Janik and Ignasiak summarized 400 cases at 20% is 80 cases at $300,000 or $24 million with 20% success rate insurance equals $4.8 million.  They rounded this up and suggested the value of the Plaintiffs' claims were only $5 million.

H. Janik and Ignasiak stated at the meeting that if they doubled their $5 million, it would be only $10 million.

I. Janik and Ignasiak rejected the idea of summary trials.

263.     **All of A-I is important because it all has been proven untrue and Defendants have never altered their position and models since 2017.**

264.     Medical Protective on their website brags they have managed over 400,000 claims since 1899, they win 90% of their insured trials and 80% of claims are closed without payment.  This, while they are losing nearly 90% of the Durrani trials, including Plaintiff's.

265.     Medical Protective claims they have advisory boards of experienced healthcare professionals who review claims and offer insights.  In Plaintiff's case and others, they did not and are not reviewing, or falsely reviewed, or ignored their reviews.

266.     Medical Protective makes a $1 billion in annual premiums and has more than 200,000 clients and $5.4 billion in assets.

267.     Medical Protective brags their average payout on a medical malpractice claim is only $90,000.

268.     Medical Protective representatives attended Plaintiff's trial and others.

269.     Judge Dale Crawford actually questioned MacKenzie Walter during the *Adams* trial why there were no offers.

270.     MacKenzie Walter actually complained to Paul Vollman and Michael Lyon that Judge Crawford "mistreated her."  He did not.  J**udge Crawford could not understand the lack of offers in light of the evidence he was hearing and the case he was presiding over.**  It is also another act of bad faith and unfair claim practices.  Defendants ignore Court orders to respond to demands and make offers.

271.     **Medical Protective has the right to defend Durrani and CAST.  However, the law requires them to follow the law.  They did not and they have not.  They are not**

**allowed to defend indefensible claims a "monkey" could win as claimed by Michael Lyon and ignore the Unfair Claims Settlement Practices Act.**

272.    The following, featuring Michael Lyon, is taken from Medical Protective's current website:

"Here's what our legal defense team has to say about our claim's philosophy, the legal environment and how Medical Protective really makes a difference in your defense.

Michael Lyon has more than 30 years of courtroom experience, 20 of those defending Medical Protective healthcare providers. He believes Medical Protective's Claims Supervisors and philosophy make the difference for healthcare providers.

"Medical Protective's professional Claim Supervisors are without a doubt the most sophisticated, intelligent, savvy, tough claims people I've met. They know their medicine, they know doctors, they know how doctors think and they understand lawyers and the law. These people are second to none. They recognize that every physician is different – intellectually, emotionally, psychologically and economically. We don't just talk about the liability, the causation, the damages and the medicine. We also talk about the doctors. How are they doing? Are the families supportive? These are the things we talk about and it doesn't happen anywhere else. The reason that is so important is because if you are able to support, comfort and give strength to your physicians, you are so much stronger in the courtroom. Medical Protective knows that. The company is run by the most professional and intelligent people.

They hire and work with attorneys that share their philosophy. A lot of companies hire lawyers to settle cases – they hire lawyers to make sure they never really go to trial because there is too much risk, they just want to get them to settle. But Medical Protective is just the opposite. They hire the best trial lawyers, not litigator, trial lawyers, who have tried cases to verdict because they want experienced tough trial lawyers available to try these cases. We are able to be strong, courageous and give the plaintiffs' bar the kind of battle they need."

273.    And Defendants have applied that to Durrani, federally indicted fugitive from the law, despite what is described in this Complaint.

274.    In January 2014, a Hamilton County jury awarded Plaintiff $1,040,000.  Medical Protective never made an offer before or after the trial.  After losing the appeal, Medical Protective had to pay the statutory reduced verdict.

275.    After Plaintiff's verdict, in 2014 and 2015, Durrani won four straight verdicts in Butler County.  However, those are no longer relevant.

276.    Since those four verdicts, the following circumstances changed:

    A.  All cases were moved to Hamilton County when Deters Law learned UC Health owned West Chester, and UC Health headquarters was in Hamilton County.

    B.  Plaintiffs added a neurosurgeon and neuroradiology expert to their orthopaedics spine expert.

    C.  Deters Law retained more experienced trial counsel in the absence of Eric Deters who tried the *Pierce* trial.  First and second year lawyers tried the Butler County cases.

277.    After Medical Protective participated in delays of failed federal removal and appeals and challenges to consolidation which delayed trials for three years from 2015 to 2018, trials finally resumed in 2018.

278.    Medical Protective claimed in 2018 the $4 million offer for 400 cases was based upon their "algorithms" and their winning 4 of the first 5 trials in a venue different from where the cases are presently venued.

279.    **Despite all the verdicts since then, there has been no settlement proposal reflecting any "algorithm" adjustment based upon all their losses**.

280.    **Michael Lyon informed a Deters Law attorney, before the *Rosebery* and *Bender* trials, "if I can win these cases maybe I can change the algorithm."  He lost both.  This was an admission by Michael Lyon the "algorithm" had been blown up. Yet, no offers.**

281.    Lindhorst and Reminger always report the "probable" verdict as defense or law such as $50,000-$100,000.  Yet, Medical Protective has never made an offer on a single case.

282.    Lindhorst position as expressed by Mike Lyon and Jim Brockman is always "totally defensible" on every file, even Potts, one of the largest Medical Malpractice verdicts in Ohio history.

283.    These jury losses by Defendants cover every imaginable fact scenario: young Plaintiffs, old Plaintiffs, deceased Plaintiffs, disabled Plaintiffs and not disabled Plaintiffs.  There cannot be a better sample of verdicts.

284.    These jury losses by Defendants involve recoverable amounts under the policies for negligence and for lack of informed consent, for lost wages, medical bills, pain and suffering and attorney fees and costs where relevant.  The verdicts are not just fraud verdicts.  They are exposing Dr. Durrani to fraud and punitive damages verdicts too.

285.    These jury trials are being held also under the oversight of various judges and various rulings: Judge Barrett, Judge Brogan, Judge Crawford, Judge Sunderman, Judge Jackson, Judge Reece, and Judge Schweikert.

286.    All of the above reflects the following statistics:

    A.  83 Total Trials- Hamilton and Federal

       64 Plaintiff Wins

       77.1% Total Win Rate

    B.  67 total Hamilton County Trials

       53 Plaintiff Wins

       79.1% Total Hamilton County Win Rate

C. 65 Hamilton County Medical Protective related trials

52 Plaintiff Wins

80% Win Rate in Hamilton County Medical Protective Related Cases

These statistics are reflected in Medical Protective's claims files, but Medical Protective still state the cases are defensible and provide a low range. **There is no defensible reason for continuing to spend millions of dollars defending cases at a 80% loss rate and collectable verdicts piling up. Only bad faith and vindictiveness.**

287.     Juries are awarding significant sums for pain and suffering to the Ohio limit maximum of $500,000 and past and future medical bills too, all covered by the Medical Protective policies.

288.     In addition, Dr. Durrani has been exposed over and over to significant punitive damages awards, all of which will follow him to Pakistan and reflects Medical Protective's bad faith related to him. We are going to certify these verdicts to Pakistan.

289.     In addition, attorney fees are being awarded by juries where punitive damages are awarded, and they too are covered by the Medical Protective policies.

290.     The following chart reflects all verdicts to date:

**DURRANI VERDICTS**

| YEAR | CLIENT | AMOUNT AWARDED | COUNTY |
|------|--------|----------------|--------|
| 2014 | Pierce | $1,040,000 | Hamilton |
| 2014 | Shell | Defense | Butler |
| 2015 | Marshall | Defense | Butler |
| 2015 | Kranbuhl-McKee | Defense | Butler |
| 2015 | Martin | Defense | Butler |
| 2018 | Beil | $1,100,000 | Hamilton |
| 2018 | Brady | $741,000 | Federal |
| 2018 | Houghton | $1,285,080 | Federal |
| 2018 | McCauley | Defense | Federal |
| 2018 | Sander | $1,375,221 | Federal |
| 2018 | Shempert | $831,200 | Federal |

| 2018 | Stanfield | $943,440 | Federal |
|------|-----------|----------|---------|
| 2018 | Rutter (Children's) | Defense | Hamilton |
| 2018 | Setters | $984,906 | Hamilton |
| 2018 | Cotter (Children's) | $3,220,000 | Hamilton |
| 2018 | McCann | $208,076.40 | Hamilton |
| 2019 | Wolsing | Defense | Hamilton |
| 2019 | Adams | $1,100,000 | Hamilton |
| 2019 | Rosebery | $900,000 | Hamilton |
| 2019 | Bender | $568,000 | Hamilton |
| 2019 | White | Directed Verdict | Hamilton |
| 2019 | Walls | $6,316,344 | Hamilton |
| 2019 | Yeakle | $700,000 | Hamilton |
| 2019 | Nichols | $26,200,000 | Hamilton |
| 2019 | Potts | $39,146,091.50 | Hamilton |
| 2019 | Hayes | Defense (on Causation) | Hamilton |
| 2019 | Mann | $505,000 | Hamilton |
| 2019 | Chhun | Defense | Hamilton |
| 2019 | McCain | Defense | Hamilton |
| 2019 | Middendorf | $100,000 | Hamilton |
| 2019 | Stratman | $1,358,847.26 | Hamilton |
| 2019 | Hounchell | $964,000 | Hamilton |
| 2020 | Greene | $1,768,468.62 | Hamilton |
| 2020 | Nafe | Defense | Hamilton |
| 2020 | Marksberry | $150,000 | Federal |
| 2020 | Ross | $1,500,000 | Federal |
| 2020 | McKinney | Defense | Hamilton |
| 2020 | Jenkins | Defense | Hamilton |
| 2020 | Stephenson | $1,320,014 | Hamilton |
| 2020 | Mains | Defense | Hamilton |
| 2021 | Densler | $162,021.20 | Hamilton |
| 2021 | Atwood | $1,891,208.99 | Federal |
| 2021 | Hickey | $4,687,819.62 | Federal |
| 2021 | Conley | $420,331.82 | Hamilton |
| 2021 | Jones | $280,133.28 | Hamilton |
| 2021 | Clark | $685,000.00 | Hamilton |
| 2021 | Reeder | $2,603,519.00 | Hamilton |
| 2021 | Pridemore | $2,594,483.00 | Hamilton |
| 2021 | Koelblin | $1,379,781.92 | Hamilton |
| 2021 | Courtney | $1,087,804.88 | Hamilton |
| 2021 | Lantry | Defense | Hamilton |
| 2021 | Shepherd | Defense | Hamilton |
| 2021 | Meyers | $5,325,000 | Hamilton |
| 2021 | Haggard | $5,295,000 | Hamilton |
| 2022 | Brown, Tara | $6,850,300 | Federal |
| 2022 | Brown, Dawn | $5,940,100 | Federal |

| 2022 | Bowling | $6,595,760.00 | Hamilton |
| 2022 | Ravenscraft | $6,481,618.21 | Hamilton |
| 2022 | McDonald | Defense | Hamilton |
| 2022 | Johnson, Karen | $1,195,000.00 | Hamilton |
| 2022 | Byar, Michele | Defense | Hamilton |
| 2022 | McClendon, Kyra | $3,807,757.62 | Hamilton |
| 2022 | Brorein, Eileen | $3,500,246.04 | Hamilton |
| 2022 | Hamilton, Samantha | $1,901,500.00 | Hamilton |
| 2022 | Zureick, Mary | $589,000.00 | Hamilton |
| 2022 | Puckett, Sherri | $2,573,991.01 | Hamilton |
| 2022 | Reynolds, Derrill | $2,742,953.52 | Hamilton |
| 2022 | Wyatt, Cheryl | $2,432,676.50 | Hamilton |
| 2022 | Judkins, Phyllis | $970,000.00 | Hamilton |
| 2022 | Falkner, Tony | $800,000.00 | Hamilton |
| 2022 | Myers, Jennifer | $194,742.58 | Hamilton |
| 2022 | Dority, Kristine | $198,438.02 | Hamilton |
| 2022 | Agee, Michelle | $365,585.75 | Hamilton |
| 2022 | Mounce, Robert | $1,075,000.00 | Hamilton |
| 2022 | Neal, Tonya | $1,430,000.00 | Hamilton |
| 2022 | Weisbecker, Laura | $1,090,000.00 | Hamilton |
| 2023 | Koch, Amanda | $11,108,333.33 | Hamilton |
| 2023 | Boggs, Kaitlyn | $11,387,500.00 | Hamilton |
| 2023 | Stallings, Eddie | $10,001,666.67 | Hamilton |
| 2023 | Beavan, Michelle | $202,784.10 | Hamilton |
| 2023 | Tanner, Ryan | $483,029.07 | Hamilton |
| 2023 | Jones, Tammy | $653,891.14 | Hamilton |
| 2023 | Weisman, Kirstin | $543,943.72 | Hamilton |
| 2023 | Lainhart, Natasha | $4,450,000.00 | Hamilton |
| 2023 | Geralds, Christine | $3,187,310.00 | Hamilton |
| 2023 | Rister, Donna | $9,228,290.00 | Hamilton |

**TOTAL AMOUNT:  $222,692,209.77**

291.     The following chart reflects the verdict amounts covered under the Medical Protective policies.  These are the collectible economic and non-economic damage reduced by Ohio law on limits that totals **$39,090,835** on only 61 verdicts when there are over 400 cases against their insureds, Durrani and CAST.

| Pierce | $350,000 | |
| Brady | $441,000 | 1:16-cv-00593 |
| Houghton | $535,000 | 1:16-cv-00593 |
| Sander | $625,221 | 1:16-cv-00593 |
| Shempert | $331,200 | 1:16-cv-00593 |
| Stanfield | $643,440 | 1:16-cv-00593 |
| Setters | $984,906 | A1506570 |

110

| | | |
|---|---|---|
| McCann | $208,076 | A1506572 |
| Adams | $616,533 | A1506958 |
| Rosebery | $649,431 | A1700331 |
| Bender | $318,415 | A1506577 |
| Walls | $516,644 | A1506955 |
| Yeakle | $700,000 | A1600235 |
| Nichols | $4,450,000 | A1601569 |
| Potts | $2,146,091 | A1206877 |
| Mann | $400,000 | A1302870 |
| Middendorf | $100,000 | A1506649 |
| Stratman | $950,000 | A1305127 |
| Hounchell | $500,000 | A1706559 |
| Greene | $1,100,000 | A1706467 |
| Marksberry | $100,000 | 1:16-cv-00593 |
| Ross | $1,025,000 | 1:16-cv-00593 |
| Stephenson | $1,320,014 | A1706544 |
| Densler | $62,021.20 | A1706561 |
| Atwood | $608,608.99 | 1:16-cv-00593 |
| Hickey | $650,019.62 | 1:16-cv-00593 |
| Conley | $420,331.81 | A1706427 |
| Jones | $280,133.28 | A1706486 |
| Clark | $495,000.00 | A1302874 |
| Reeder | $103,519.00 | A1706492 |
| Pridemore | $94,483.00 | A1506576 |
| Koelblin | $629,781.92 | A1506160 |
| Courtney | $337,804.88 | A1307859 |
| Meyers | $325,000.00 | A1706581 |
| Haggard | $295,000.00 | A1706514 |
| Brown, T. | $550,300.00 | 18-cv-785 |
| Brown, D. | $440,100.00 | 18-cv-786 |
| Johnson, K. | $520,000.00 | A1505624 |
| McClendon | $250,000.00 | A1506695 |
| Brorein | $500,000.00 | A1706556 |
| Zureick | $250,000.00 | A1400581 |
| Hamilton | $500,000.00 | A1706393 |
| Puckett | $1,233,991.01 | A1601536 |
| Reynolds | $1,392,953.52 | A1706444 |
| Wyatt | $1,182,676.50 | A1505970 |
| Judkins | $470,000.00 | A1700332 |
| Falkner | $300,000.00 | A1706408 |
| Myers | $169,742.58 | A1505971 |
| Dority | $173,438.02 | A1700305 |
| Agee | $340,585.78 | A1506571 |
| Mounce | $325,000.00 | A1700301 |
| Neal | $680,000.00 | A1706394 |

| Weisbecker | $340,000.00 | A1506223 |
|------------|-------------|----------|
| Koch | $1,273,095.78 | A1806348 |
| Boggs | $1,273,095.78 | A1700333 |
| Stallings | $692,078.47 | A1706456 |
| Tanner | $333,029.07 | A1506304 |
| Beavan | $202,784.10 | A1505423 |
| Lainhart | $850,000.00 | A1700296 |
| Geralds | $707,000.00 | A1700303 |
| Rister | 828,290.00 | A1706450 |

292.     These amounts do not cover prejudgment interest and attorney fees covered under the policy when punitive damages are awarded.

293.     **Michael Lyon told Alan Statman, lead trial counsel for Plaintiffs in the state medical malpractice cases, "that a monkey" could win the trials for Plaintiffs. This further supports the claims being brought here. Medical Protective and Michael Lyon are defending claims they know are indefensible because in their own words, a "monkey" could try them for a Plaintiff.**

294.     Defendants know every case has the required affidavit of merit by a qualified spine surgeon. Therefore, they know these cases will "get to a jury."

295.     On the record and "off the record," Judge Sunderman, Brogan, Crawford, Jackson, Reece and Barrett, all having tried one or more case, have commented to Michael Lyon and his associates and partners, their dismay and surprise at Medical Protective's scorched earth defense with no settlement offers.

296.     Defendants know the evidence juries are reviewing in every trial including Durrani's video testimony focused on his credibility is insurmountable against them.

297.     Medical Protective and Michael Lyon are choosing to spend hundreds of thousands of dollars a case on the following:

    A.     Review

112

      B.      Answering

      C.      Answering Discovery

      D.      Sending Discovery

      E.      Taking Depositions

      F.      Hiring Experts

      G.      Preparing Exhibits

      H.      Preparing for Trial

All on a case they think they would lose to a "monkey."

298.      **All of the large punitive damages verdicts against Durrani reflect the strength of the cases which Medical Protective refuses to make an offer.  As of the present date, Medical Protective and Lindhorst have exposed Durrani to over $25 million in punitive damages not covered under the policy.**  These judgments will be certified and transferred to Pakistan for collection, **including Plaintiff's**.

299.      On August 6, 2019, Judge Dale Crawford, assigned Hamilton County Common Pleas Judge retired, to the *Patricia Adams v. Durrani* case, held a hearing on prejudgment interest under Ohio law, Ohio Revised Code §1343.03, on the $1,100,000 verdict.

300.      Ohio Revised Code §1343.03 allows prejudgment interest when "the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is paid did not fail to make a good faith effort to settle the case."

301.      Stipulations were placed on the record on August 6, 2019, for the prejudgment interest hearing.

302.     The stipulations clearly apply to ALL cases including this claim against Medical

Protective as placed on page 4 of the transcript.  MacKenzie Walter, a Medical Protective

representative told Judge Crawford in 2018 as placed on the record by Judge Crawford:

"she further advised the Court **we are not making offers on any of these cases.**"  It was

repeated on page 5 of the transcript.  Mike Lyon, lead Medical Protective and the Durrani

and CAST lawyer, agreed to the stipulation on the record. **This was the same strategy**

**that was used in Plaintiff's case**.

303.     On pages 6 and 7 of the transcript **Paul Vollman, Mike Lyon's associate, told**

**Judge Crawford "his client," the insurance company (Medical Protective), was not**

**making any offers."**  Judge Crawford found Mr. Vollman's declaration troubling.  Lyon

adopted the declaration on page 7 of the transcript.  Again, incredible evidence

supporting what is pled, that Lindhorst is not simply Durrani's counsel, but Medical

Protective's, and it all supports the conspiracy to defraud the victims of coverage.

304.     On page 13 of the transcript, Mike Lyon begins his argument opposing

prejudgment interest.  He argued figuratively "we had experts so too bad."  We plead

Durrani's experts, paid by Medical Protective, are being paid for helping Medical

Protective in their conspiracy of fraud.  We plead their experts KNOW the cases can't be

defended, so for money, they just do it.  The juries actually openly scoff at their experts

during trial and give them zero credibility in post-trial interviews. **This happened in**

**Plaintiff's trial also**.

305.      The records Medical Protective produced often redact the opinions of experts are

often redacted, showing Medical Protective knew the cases were indefensible, but

shopped for new experts that would "play ball."

306.     Judge Crawford also put on the record MacKenzie Walter of Medical Protective told him Medical Protective does not care about paying attorney fees to Lindhorst. She told Judge Crawford Medical Protective doesn't care if the attorney fees exceed even the $40 million in coverage. Medical Protective would rather pay their attorneys in a lost cause than the victims.

307.     Lindhorst always estimates the cost of trial at $150,000, Reminger estimates the cost of trial at $25,000.

308.     Based on Lindhorst's ow numbers, if 280 cases went to trial it exhausts 42 million by the cost of the defense alone! With prejudgment interest (over $950,000.00 so far) and attorney fees, the price of trying only half the cases is much larger than the 42 million dollar policy limit.

309.     **Judge Crawford, then on page 22 and 23 of the transcript, after stating he had tried more trials than any judge in the state of Ohio declares Medical Protective's conduct "bad faith."**

310.     Judge Crawford awarded over $125,000 in prejudgment interest in the *Adams* case. However, what was stipulated to on the record has applicability to the issues being litigated here.

## REFUSAL TO RESOLVE RATIONALLY AND FAIRLY

311.     From the beginning of Plaintiff's claims to the present, there has never been one written offer to settle these cases.

312.     Judge Guckenberger as early as August 2013, would go off the record at case management conferences and ask why limits had not been tendered by Medical

Protective.  Michael Lyon would state every time- we need discovery and trials first to assess our risk and exposure.  Of course, that was not true.  It was lie.

313.    From 2013 to the present, the only "concrete" oral offer has been $4,000,000 to settle over 400 cases or only $10,000 a case.  There was one $2,000,000 written offer only through another Defendants' counsel or $10,000 a case.  This predated the $4,000,000 oral offer.

314.    Medical Protective knows they are losing nearly 70% of the trials, all held in the state of Ohio where statistically over 90% of the time the defense wins.

315.    From 2013 to 2017, there were no offers, including on Plaintiff's case.  In 2017, there was the above referenced $2,000,000 offer.  In 2018, Medical Protective made a bad faith and insulting $4 million global offer to resolve over 400 cases.

316.    Based upon the years of delay, in 2017, Plaintiffs attempted to settle for $21 million or half of the $42 million.  They were ignored.  They received a $2.1 million offer at the Kentucky mediation after they thought they would receive an opening offer of $10 million.  The $2.1 million was millions less than the $4.8 million they previously claimed was in their algorithm.

317.    Medical Protective has also acted in bad faith to their insured Durrani by failing to protect him from excess coverage verdicts and judgments including punitive damages.

318.    There are over 400 cases against Durrani and his Center for Advanced Spine Technologies or CAST and covered by Medical Protective.

319.    Based upon these verdicts, it is bad faith and unfair claims practices for Medical Protective to make no offers.

320.    Bad faith and unfair claims practices are supposed to avoid "low ball" offers.  In these matters, these are "no ball" offers.

321.    Feigned assessment and evaluation of every case by the defense resulting in no offers in the face of repeatedly significant jury verdicts is bad faith and unfair claims practices.

322.    In pleadings (*McCann*) arguing against prejudgment interest, Michael Lyon has argued the following:

A.    "Defendants did in fact rationally evaluate their risks and potential liability."

B.    "Defendants were represented by experienced trial counsel and they were firm in their actions in this case were medically indicated and appropriate."

C.    They claimed their "conviction was based on science and expert testimony."

D.    They claimed "ongoing settlement discussions for years to resolve this and other related litigation on a global basis."

None of this has any credibility at all and further reflects bad faith and unfair claims practices.  In addition, the expert credibility gap between Plaintiffs' experts and Defendants' experts at trial is wide in favor of Plaintiffs.  Every trial, Defendants "don't touch" Durrani Plaintiffs' experts while Defendants are destroyed, including Plaintiff's.   All of this has been witnessed and known by Defendants.

### SUMMARY OF UNFAIR CLAIMS PRACTICES
### AND BAD FAITH BY DEFENDANTS

323.    Encouragement of and/or assistance in flight from the U.S. making false and misleading statements regarding the same to Court, Plaintiffs, and others.

324.     The improper use of Durrani's flight by Defendants to attempt to mislead and state coverage would be void based upon lack of cooperation with the hope that Plaintiff would walk away.

325.     The coaching and manufacturing of Durrani claiming he would not participate in trials including the drafting of Durrani's emails to Medical Protective.

326.     The intentional refusal to communicate to Durrani a proposal of assigning his bad faith claim to Plaintiffs.

327.     Refusal to make a single offer on a single case from 2012 through now in the face of overwhelming evidence of Durrani's liability and not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

328.     Refusal to make a single global offer to settle over 400 cases from 2013 to 2017.

329.     Making a global offer of only $5,000 a case at the end of 2017.

330.     Making a global offer of only $10,000 a case in the middle of 2018.

331.     Misrepresenting the amount of coverage.

332.     Losing the majority of trials with large verdicts significant portion covered by coverage and still no offers.

333.     Knowing they will lose cases, not making offers, forcing Plaintiffs to try them and Deters Law to spend money on experts and both Plaintiffs and Deters Law to incur the stress, expense and cost of trials.  Despite the victories, trials are stressful, including jury deliberations.  Scheduling trials takes time. Plaintiffs continue to suffer through Defendants' delay in settling.

334.     Misrepresenting Durrani's desire to testify at trial.

335. Not even offering a cost of defense settlement on the cases.

336. The delays caused by Medical Protective have affected the memories of Plaintiffs based upon the time from surgery, to lawsuit to trial. Loss of memory and many deaths equals loss of evidence and severe prejudice to cases. It is part of the intent and strategy of Medical Protective's bad faith and unfair claims practices.

337. Ignoring their own algorithm.

338. Using experts they pay well to attempt to defend indefensible cases.

339. Not communicating with Dr. Durrani while defending him through trial.

340. Not informing Durrani they have exposed him to over $60 million in uncovered verdicts.

341. Not communicating an assignment of his claim.

342. They did not appeal for Dr. Durrani the *Beil* verdict because it was not covered under the Medical Protective policy. This proves what they care about. It's not their "claimed client" Dr. Durrani.

343. Any rational and objective review of all the above would result in the conclusion Defendants acted in egregious bad faith and unfair claims practices.

## MOTIVE OF DEFENDANTS

344. The motive of Defendants has been financial. Plaintiffs and their fellow Durrani victims look forward to finding what Defendants set up as a reserve on the claims and what they have earned those reserves on the $42 million in coverage since 2013.

345. The motive of the Defendants has been personal animus towards Deters Law who has never capitulated, fought back and kept the litigation going on all fronts. Deters Law met the challenge of trying case after case.

119

346.     The motive of the Defendants has been extreme cruelty to Plaintiffs. Fifty-six

have died and many more financially ruined and each one suffering incredible pain from

their unnecessary spine surgeries.

347.     Forcing Plaintiffs to go through discovery, trial, and appeals, and forcing Deters

Law to go through discovery and trials has been a huge dare game that has not worked.

The costs to prepare and try cases from experts, to transcripts to technical support in the

courtroom is exorbitant and Defendants have forced Deters Law to sustain that and they

have.

348.     The primary motive of Defendants is the $42 million value of the Medical

Protective policies and their lawyers making money.

349.     As indicated above, defendant Robert Ignasiak is and, at all pertinent times, was

the Senior Vice President, General Counsel, and Claims Leader for defendants The

Medical Protective Company, Inc. and MedPro Group, Inc.  He reports to Timothy

Kenesey regarding, among other things, the Medical Protective policies at issue and

Plaintiffs' claims against them.  Upon information and belief, defendant Robert Ignasiak

planned, organized, carried out, and manages Medical Protective's coverage and claims

payment positions, policies, algorithms, and strategies regarding the non-payment of

Plaintiffs' claims arising under Medical Protective policies, and said conduct gives rise to

Plaintiffs' claims and causes of action against Defendants for violations of the Kentucky

Unfair Claim Settlement Practices Act.  Some of the tortious acts and omissions

complained of by Plaintiffs against defendant Robert Ignasiak, acting on behalf of

Medical Protective, occurred outside Kentucky, he caused tortious injuries, damages, and

losses to Plaintiffs in Kentucky.  His employer, Medical Protective,  regularly does or

solicits insurance business, engages in persistent courses of conduct in Kentucky, and derives substantial revenue from insurance business and services rendered in Kentucky.

## FURTHER FACTS SUPPORTING FRAUD IN THE LACK OF COOPERATION AND CONSPIRACY

350.     The deposition game orchestrated by Medical Protective from 2013 to 2018 is obvious.

351.     No one benefited from the game more than Medical Protective.

352.     They have used the lack of cooperation defense not to make a single offer on a single case and only a low ball "global offer."

353.     The Judge Barrett and Judge Sargus Orders in 2017 regarding possible sanctions spooked Medical Protective into setting up Durrani depositions.

354.     Durrani's February and March 2018 depositions ended the lack of cooperation issue because he gave testimony in every case.

355.     Judge Barrett's Order in May 2017 led to the depositions in the *Atwood* cases.

356.     Mike Lyon blames the volume of cases for any issue.

357.     Durrani's Medical Protective lawyers could have asked general questions like we did in the February and March 2018 depositions and did not:

a)  Did you care about your patients?

b)  Did you fully explain the procedures you performed?

c)  Did they require the surgeries?

d)  Etc.

358.     Lyon claims they would "win" if on the "medicine."  Yet, they keep losing on the "medicine."

359.     Judge Black's Order on cooperation came in 2016.  Medical Protective has taken no action on it after seven years.

360.     Mike Lyon is part of the lack of cooperation fraud conspiracy as the "handler" of Durrani.  He has been the only attorney claiming contact with Durrani.  How bizarre is this?  Only Mike Lyon, not the other lawyers in his firm who have been trying the cases, and not the other lawyers in the two other law firms trying cases.

361.     No one is representing Durrani on any of the Medical Protective lawsuits. Medical Protective filed or we have filed.

362.     When told about the deposition requests, Durrani said yes to Mike Lyon.  Mike Lyon told us no.

363.     A win in *Adams* ends the cooperation defense in  all cases.

364.     They concocted a "lack of cooperation" defense so they could use it not to settle. It is evil.

365.     The damages which flow from Medical Protective's wrongful actions include:

   A.  No settlements;

   B.  Costs/Expenses;

   C.  Stress of Litigation/Trials/Appeals;

   D.  Emotional Stress;

   E.  Non-Payment of Covered Verdicts.

**DEPOSITION TESTIMONY FROM RICK MARCELLO FROM MEDICAL PROTECTIVE CLAIMS**

366.     They have experts to defend Durrani, but Marcello claims need Durrani for:

   a.     "What was Durrani thinking?"

   b.     "Conversations with the patients?"

c.     "Reasons for surgery?"

Durrani's records ALWAYS have this information.

367.     Marcello reported to Robert Ignasiak, Vice President of Claims.

368.     Marcello claims they have experts to defend, but they keep losing.

## DEPOSITION TESTIMONY FROM DAVID BENDEL FROM MEDICAL PROTECTIVE CLAIMS

369.     He had $100,000 a case authority to settle.  Based on the 400 plus claimants on this policy, that amount would have resolved this with all claimants at the individual limit.

370.     He is the Regional Claims Manager.  Richard Marcello replaced him.

371.     Rick Marcello, Marvin Benson and Joseph Crawford also had $100,000 limit authority.

372.     Joseph Crawford admitted he deleted emails received from Mike Lyon. He was managing the Durrani litigation.

373.     Bendel claims reserves were set on the cases.

374.     The initial reserve was ballpark for each case- $5,000-$6,000 plus $5,000-$6,000 to defend.  So $10,000 to $12,000 each case.

375.     Bendel's authority when he left the company was $750,000.

376.     He admits large verdicts would be a factor to take into consideration in settling.

377.     Bendel claims it costs to defend through trial $50,000-$100,000.  Again, the same amount to settle all cases.

378.     Bendel admits Medical Protective has obligation to protect Durrani over the coverages.  They clearly have not and are representing only Medical Protective's interests.

## DEPOSITION TESTIMONY FROM ROBERT IGNASIAK, VICE PRESIDENT OF CLAIMS OF MEDICAL PROTECTIVE

379.      He never read a trial transcript. None were ever sent to him and he never requested.

380.      He never called Durrani.

381.      He never asked Mike Lyon for Durrani's number.

382.      He never sent someone to Pakistan.

383.      No one informed him of Judge Reece's concerns that Medical Protective's attorneys, rather than representing Durrani, which they claim in open court they are doing (and through pleadings), Medical Protective is representing in its own interests and disguising itself as Durrani. Medical Protective has made Durrani Medical Protective's alter ego. It's a disguise. Medical Protective completely controls the litigation, including settlement authority. Durrani is being used as a shield to allow Medical Protective to escape the consequences of the litigation and its wrongful acts.

384.      No one sent Durrani depositions including the February/March 2018 testimony of Durrani.

385.      No one sent Durrani MacKenzie Walters' statement to Judge Crawford about Medical Protective never paying.

386.      He was never told of Mike Lyon stating the lawsuit against Lyon is an impediment to settlement.

387.      He was never told of Mike Lyon claiming he would get the lawsuit resolved in Ft. Wayne.

388.      He was never told the experts needed Durrani's cooperation.

389.      He has never observed any of Durrani's lawyers at trial.

390.     There are no algorithms as claimed by Mike Lyon.

391.     He has never spoken to Durrani's criminal counsel.

392.     He is unaware of any action taken regarding Judge Black's decision on cooperation.

393.     He denies reserves were set.

### DEPOSITION TESTIMONY FROM MARVIN BENSON FROM MEDICAL PROTECTIVE CLAIMS

394.     He reported to David Bendel.

395.     The high volume of cases were a "red flag.

396.     Through Marvin Benson's retirement in 2015, Mike Lyon never complained to Marvin Benson about Durrani's lack of cooperation.

397.     Marvin Benson admits a Durrani conviction "could" taint the jury and would be a "concern."

398.     He believed reserves were $3,000 as arbitrary and could be adjusted.

### THE MEDICAL PROTECTIVE COMPANY, INC. AND MED PRO GROUP, INC.

### ALTER EGO

399.     The irrefutable and undisputable facts supporting Medical Protective using Durrani as its alter ego include the following:

 a)  Medical Protective insures Durrani.

 b)  Medical Protective defends Durrani by paying for and consulting with the assigned legal counsel.

 c)  Medical Protective obtained a court order whereby it no longer needed Durrani's consent to settle any of the pending lawsuits.

d) The lawyers paid by Medical Protective do not communicate with Durrani and all but one have never spoken a word to him.

e) The lawyers do not appeal fraud only verdicts because those verdicts are not covered by the policies.

f) The lawyers and Medical Protective are making every single decision from discovery, trial and appeal without Durrani's input and participation.

g) Paul Vollman, one of Medical Protective's lawyers "representing" Durrani, stated in open Court that Medical Protective was his client.

400.     Medical Protective and the lawyers it pays are managing and defending this litigation without any input whatsoever from Durrani.  Medical Protective has made Durrani its alter ego.  Medical Protective is using the façade of Durrani contesting the cases to prolong its carefully crafted lack of coverage defense.  Medical Protective's lawyers, the Court knows from its own questioning, admit that they have not even tried to seek direction from Durrani.  The Rules of Professional Responsibility require that some direction be given by Durrani.  The fact these cases proceed is certainly proof they are doing so without it.

401.     The Medical Protective Company, Inc. and Med Pro Group, Inc. have made Durrani its alter ego and any verdict and judgment against Durrani and CAST, including punitive damages, should  be considered a verdict against The Medical Protective Company, Inc. and Med Pro Group, Inc.

## CAUSES OF ACTION

### FRAUD

402.    Plaintiffs incorporate the statements and allegations set forth above as if fully rewritten herein.

403.    All those facts support a claim for fraud in creating the lack of cooperation defense against the defendants.

404.    As a direct and proximate result of these facts Plaintiffs suffered directly and proximate harm and damages.

## CIVIL CONSPIRACY

405.     Plaintiffs incorporate by reference every paragraph contained in this Complaint, as if fully restated herein.

406.    Defendants along with third parties known and unknown, did together, plan, prepare, and execute the aforementioned fraud in creating the lack of cooperation defense.

407.    These persons did form such conspiracy with a conscious disregard for the rights of the Plaintiffs.

408.    They formed such conspiracy knowing its objects had a great probability of causing substantial harm to Plaintiffs.

409.    Plaintiffs have suffered harm as a result of the aforementioned conspiracy.

## SPOLIATION OF EVIDENCE

410.    Defendants willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiffs' records, billing records, paperwork and related evidence, and willfully destroyed evidence by defendant.

411.    Defendants spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

412.     Defendants' conduct was designed to disrupt Plaintiffs' potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiffs.

## PRAYER FOR RELIEF/JURY DEMAND

**WHEREFORE,** Plaintiffs demand judgment, jointly and severally, against defendants The Medical Protective Company, Inc., MedPro Group, Inc., f/k/a Medical Protective Corporation and Robert Ignasiak under all claims for all compensatory damages in an amount in excess of $75,000, excluding interest and cost, punitive and other damages, attorney fees and costs; a trial by jury and all other relief to which Plaintiffs may appear entitled.

Respectfully submitted,

/s/ James F. Maus_____
James F. Maus (#0098245)
7577 Central Parke Boulevard, Suite 113
Mason, OH 45040
(915) 232-7533
attyjamesmaus@aol.com
Attorney for Plaintiffs

/s/ Robert A. Winter, Jr._____
Robert A. Winter, Jr. (#0038673)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
(859) 250-3337
robertawinterjr@gmail.com